410 A.2d 787

COMMONWEALTH of Pennsylvania, Appellee,

v.

Leroy SMITH, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 19, 1979.

Decided Feb. 1, 1980.

Timothy J. Savage, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div.; Virginia Kerr, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Appellant, Leroy Smith, was convicted in a jury trial of murder in the first degree and three counts of robbery. Postverdict motions were denied and appellant was sentenced to life imprisonment for the murder conviction with three ten-to-twenty prison terms for the robbery convictions. This appeal followed.

On December 16, 1975, four men armed with guns entered a West Philadelphia bar, announced a holdup and began taking the patron's wallets and money, when off-duty Philadelphia policeman, William Daniels, a patron in the bar in

civilian clothes, ran for the door. Officer Daniels was shot and the robbers rushed out of the bar. The last robber to exit fired another shot into Officer Daniels and a wild shot which struck a woman patron in the foot. Officer Daniels died as a result of the gun shot wounds.

One of the robbers left a briefcase in the bar, containing a piece of paper with a name and telephone number, which was traced to an apartment less than two blocks from the site of the holdup and murder. The owner of the apartment building identified the name on the piece of paper as her granddaughter who was living in the second floor apartment. The owner admitted the police officers and a search for the robbers ensued. The police apprehended appellant and his three companions after finding them huddled in an attic crawl space with their shirts, shoes, and socks removed. Later the police obtained a search warrant, searched the premises, and found four guns and the decedent's wallet and badge.

The appellant was immediately taken to the Police Administration Building. He arrived at 11:15 p. m. on December 16, 1975 at which time he was left alone for 45 minutes. Appellant was given his *Miranda* rights by the interrogating officer, waived them, and was interrogated at midnight. At that time appellant admitted he had gone to the bar that evening but denied going inside. Forty-Five minutes later, 12:45 a. m., December 17, 1975, appellant agreed to take a polygraph examination, signed a polygraph waiver, once again waived his *Miranda* rights, and took the examination. The polygraph examination was started at 1:00 a. m. and completed at 2:00 a. m. At 2:10 a. m. the interrogating officer once more gave appellant his *Miranda* warnings. The appellant waived those rights and gave a statement of the incident, in which he admitted his participation in the robbery and denied that he shot Officer Daniels. This was reduced to writing. The appellant read the statement, made some corrections, and signed his name to the bottom of each page of the statement. The statement began shortly after 2:10 a. m. and was completed at 4:30 a. m.

Appellant moved to have the statement suppressed on the basis of involuntariness and unnecessary delay. The motion was heard and denied March 23, 1976.

Four issues are raised in this appeal. The first concerns the admissibility of appellant's confession. The remaining three consist of challenges to evidentiary rulings made by the trial court.

■ First, appellant argues that his confession was the product of coercion, unnecessary delay, and an illegal search. We disagree with the appellant.

In the pre-trial suppression hearing, at trial, and again on this appeal appellant has maintained that his confession was involuntary because it was the product of a beating inflicted upon him by the interrogating officer. The trial court found as a fact that no force, threats, or promises were used or made in order to induce appellant to make his confession.

When a statement is challenged as involuntary, the Commonwealth bears the burden of demonstrating by a fair preponderance of credible evidence that the statement reflects the free and unconstrained choice of the maker. *Commonwealth v. Davenport*, 449 Pa. 263, 295 A.2d 596 (1972). In *Davenport* we said: "Where, as here, the trial court ruled the statement of the accused was voluntarily given, our review is limited to a consideration of the testimony of the witnesses offered by the Commonwealth and that portion of the testimony for the appellant which remains uncontradicted." 449 Pa. 263 at 267, 295 A.2d 596 at 598 (1972).

A review of the record in accordance with the guidelines set forth in *Davenport* discloses adequate evidence to support the findings of the court below.

The interrogating officer testified that he had not applied physical force to the appellant at any point during the interrogation and we may not now weigh appellant's allegations to the contrary. The officer's testimony further reveals the appellant had a small cut on his head and several scratches and bruises on his body. Testimony of Detective Chitwood establishes the appellant had a small wound on his

head and some body abrasions immediately after he came out of the crawl space. The Detective also testified that he ruined a suit, a pair of shoes and received cuts and abrasions himself in climbing from the entrance of the crawl space and through the attic. A report drawn up at the Police Administration Building by Detective Andre Stephans indicated that appellant had a small cut on the head, scratches on the body and swelling on the left arm. According to that report, the appellant sustained these injuries when he fell to the floor being removed from the crawl space. On December 17, the following day, appellant was examined at the Philadelphia Detention Center. The only apparent injuries noted by the medical examination were a one-centimeter laceration on the head, 24 hours old. Similarly a Report of Injuries to Newly Admitted Inmates[1] states appellant had a cut on top of his head, swollen left arm and hand, bruises on left side of back, and bruised and swollen right leg.

The available medical evidence reveals a few injuries of the type that might be caused by a rapid unwieldly exit from an unfinished ceiling crawl space by a person with no clothing on other than pants. It is for the trial court to determine the weight to be given the evidence, and the testimony was clearly sufficient to support the findings that appellant voluntarily and freely confessed.

Concerning appellant's contention that his confession was the product of a pre-arraignment delay, we have established a three-prong test for determining when such delay would mandate exclusion of inculpatory evidence under Pa.R. Crim.P. 130. "The delay must be unnecessary; evidence that is prejudicial must be obtained; and the incriminating evidence must be reasonably related to the delay." *Commonwealth v. Williams*, 455 Pa. 569 at 572, 319 A.2d 419 at 420 (1974).

---

1. The report was signed on January 4, 1976 by a doctor who had not examined the appellant on December 17 when he was admitted to the Detention Center and who relied solely on the defendant's representation that it was accurate. Its probative value was therefore questionable.

In *Commonwealth v. Blagman*, 458 Pa. 431, 326 A.2d 296 (1974), we held that time devoted to a polygraph examination, when agreed to by the defendant and given promptly after such agreement, will not constitute unnecessary delay.

As early as 1972, in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), we held that when determining if pre-arraignment delay exists we need only consider the amount of time the accused is in custody up until the incriminating evidence is obtained. It would be ludicrous to suggest that the time following the statement was related to its procurement.

Viewed in light of the standards set forth above we see the trial judge found that the appellant arrived at the Police Administration Building at 11:15 p. m. Appellant began his inculpatory statement at 2:10 a. m. only three hours after being in custody. During his first 45 minutes, the appellant was left alone. Another hour of the pre-statement time was consumed by the polygraph examination which appellant agreed to take. An additional fifteen to thirty minutes of time were taken up by the giving of *Miranda* warnings, execution of waivers, and the transportation of the appellant from the initial interrogation room to the polygraph room. During the three-hour period preceding his statement only forty-five to sixty minutes were devoted to non-polygraph questioning. Under these circumstances we do not find unnecessary delay.

The appellant also challenges the admissibility of his confession, asserting it was the product of an arrest made without probable cause.

We will not discuss the merits of this issue, since appellant failed to raise the legality of his arrest in his written pretrial suppression motions and in post-verdict motions, and, this is waived by virtue of Pa.R.Crim.P. 323(b); Pa.R.Crim.P. 1123(a); *Commonwealth v. Terry*, 482 Pa. 564, 394 A.2d 466 (1978); *Commonwealth v. Simmons*, 482 Pa. 496, 394 A.2d 431 (1978).

■ Appellant next claims the trial court erred in not granting a mistrial when the Commonwealth's witness made references to the appellant's willingness to take a polygraph examination. We agree with the trial court's decision.

The prosecutor, at trial, during direct examination of the detective who interrogated the appellant at the Police Administration Building, asked the witness to give a chronological narrative of the interrogation. When the testimony reached the point at which appellant had made the incriminating statement, admitting participation in the crime and denying he shot Officer Daniels, the witness was requested to read the statement into the record. The challenged reference to the polygraph examination was part of this statement and came on the seventh and last page of the statement. Defense counsel did not move for a mistrial at that time. He waited approximately two or three minutes, until the prosecutor finished direct examination and the court called a recess before making the motion for mistrial.

Pa.R.Crim.P. 1118(b) provides: "When an event prejudicial to the defendant occurs during trial, only the defendant may move for a mistrial; the motion shall be made *when the event is disclosed.* Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." (emphasis added). See *Commonwealth v. Riggins*, 478 Pa. 222, 386 A.2d 520 (1978).

Since the challenged testimony came in the context of a recital of the contents of the defendant's confession, a document with which defense counsel was thoroughly familiar, defense counsel could have requested an advance deletion of the polygraph reference. When, as here, the asserted error is one that could readily have been anticipated and avoided, the defendant's explanation for noncompliance with Pa.R.Crim.P. 1118(b), that counsel wished to avoid compounding the alleged prejudices, is hardly persuasive. Moreover, the reference to the polygraph examination established only appellant's future willingness to take a lie detector test, obviously to substantiate and verify the contents of the

written confession.[2]   The reference lent no weight and established no evidence that appellant had previously taken a polygraph examination.   Accordingly, no reason of manifest necessity required declaration of a mistrial.

■   Next appellant asserts the trial court erred in allowing the prosecutor to question the bartender on redirect-examination regarding his reasons for keeping a gun in the bar.   Specifically, he claims the questions were irrelevant, prejudicial and inflammatory.   We must disagree with the appellant.

Defense counsel, on cross-examination of the bartender, attempted to discredit him by eliciting that he had initially failed to tell the police that an unlicensed gun had been stolen from him during the shooting.   On redirect examination, the prosecutor merely asked the bartender three brief questions about why he was in possession of the gun.[3]   The somewhat inarticulate answers elicited by the questions at issue were neither inflammatory nor prejudicial.   The bartender clearly told the jurors nothing to connect the appellant with the unlicensed gun or any previous incidents which occurred at the bar.

■   Appellant further argues that the trial court erred in refusing to permit the defense counsel's cross-examination by extraneous inquiries into the bartender's familiarity with newspaper reports of the herein crime.   We disagree with

2.   The appellant had just signed each page of his confession when the interrogating officer asked appellant "are you willing to take a polygraph examination?"   The appellant answered "yes."   The witness continued to state that the defendant had signed his name to the question, whether he was willing to take a polygraph examination.

3.   First, the prosecutor asked why Jenkins (bartender) had not been completely candid with the police about the gun.   Jenkins answered, "because I didn't have a permit to carry one."   Second, the prosecutor asked if Jenkins used the gun when he was away from the bar. Jenkins answered that he did not.   Finally the prosecutor asked Jenkins to tell the jury why he carried a gun in the bar.   Jenkins said, "Because incidents that have happened, that the bartender before me had been shot, he was shot down, and the whole lot of stuff went on before I was working there."

the appellant. The defense was attempting to show the bartender's identification testimony may have been based upon newspaper accounts and not upon his independent recollection of the robbery. Throughout his cross-examination of the bartender, defense counsel made persistent unproductive attempts to cast doubt on the accuracy of the bartender's identification of the appellant. The witness repeatedly denied that his identification testimony was based upon sources other than his independent recollection of the robbery. Defense counsel continued with the same line of inquiry, questioning the bartender's familiarity with newspaper accounts of the crime. Upon objection, the trial court refused to allow defense counsel's cross-examination. A trial court possesses a broad discretion to control the conduct of cross-examination and its rulings in this area will not be disturbed absent a clear abuse. *Commonwealth v. Schmidt*, 437 Pa. 563, 263 A.2d 382 (1970). Here the trial court foreclosed inquiry into the sensitive and potentially prejudicial subject matter of newspaper accounts of the crime charged.

Finally, appellant challenges the trial court's ruling permitting the introduction of the weapons, used in the crime, into the evidence alleging they are the product of an illegal search and seizure.

Appellant admits this is a new issue which was not addressed by the court below. The issue was waived and accordingly we will not discuss the merits of this claim. Pa.R.Crim.P. 323(b); Pa.R.Crim.P. 1123(a); *Commonwealth v. Terry*, 482 Pa. 564, 394 A.2d 466 (1978); *Commonwealth v. Simmons*, 482 Pa. 496, 394 A.2d 431 (1978).

Judgment of sentence affirmed.

MANDERINO, J., did not participate in the decision in this case.

ROBERTS and NIX, JJ., concurred in the result.