439 A.2d 1154

COMMONWEALTH of Pennsylvania

v.

**Walter PENN, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 27, 1981.

Decided Jan. 26, 1982.

234

236

Michael J. Byrne, Jr., Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Mark S. Gurevitz, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT, and HUTCHINSON, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This is a direct appeal from judgments of sentence imposed by the Court of Common Pleas of Philadelphia on convictions of murder of the first degree and possession of an instrument of crime. For the reasons set forth below, we affirm.[1]

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence establishes that on December 23, 1977, appellant became involved in an argument with Frances Hood, a woman with whom he was living. During the argument, appellant first attempted to push Ms. Hood out of a window. He then killed her by stabbing her repeatedly in the neck and chest, and fled the scene.

Appellant was arrested on January 25, 1978, on an unrelated charge, at which time he gave police a fictitious name. Upon determining appellant's true identity, police discovered that there existed two outstanding warrants for appellant's arrest on charges of murder, including the murder of Frances Hood. Following conviction by a jury, post-verdict motions were denied. Appellant was sentenced to life imprisonment for the murder and a concurrent term of two and one-half to five years for the weapons offense. This appeal followed.

Appellant advances numerous contentions in support of his argument that two incriminating statements made to police shortly after his arrest should have been suppressed. He first claims that his warrantless arrest was invalid because it was not based upon probable cause. He does not contend that the Commonwealth's evidence, if believed, fails to establish probable cause, but rather that the police version of the arrest was fabricated and that his version of the arrest should be believed. According to the Commonwealth, on January 25, 1978, a woman named Ruby Blocker approached a Philadelphia police officer and told him that she had been stabbed and held hostage by appellant. The stab

1. This case was reassigned to the present writer on January 4, 1982.

wounds were visible to the officer. She further informed the officer that appellant was wanted for two murders and that he was at that time fleeing in a brown Hornet automobile. The officer and Ms. Blocker then pursued the vehicle, which was still in sight. After a chase, appellant was apprehended by other officers who had heard the broadcast of appellant's description and location over police radio. Seconds later, Ms. Blocker positively identified appellant as her assailant. This evidence clearly establishes that there were facts available to the arresting officers which would justify the belief of a reasonable person that a crime had been committed and that appellant was the perpetrator. See *Betrand Appeal*, 451 Pa. 381, 303 A.2d 486 (1973).

Appellant contends that he was in fact arrested simply because he had vomited on the sidewalk. The suppression court rejected appellant's version of the arrest as incredible and credited the testimony of police. Resolution of questions of credibility is for the trier of fact, and where, as here, that resolution is based upon credible evidence, it will not be disturbed on appeal. *Commonwealth v. Whack*, 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Duncan*, 473 Pa. 62, 373 A.2d 1051 (1977). Accordingly, we reject appellant's claim that his warrantless arrest was invalid.

Appellant next contends that he was interrogated prior to receiving his *Miranda* warnings and that this interrogation tainted all subsequent statements made by appellant. Appellant's contention is based on the fact that, while appellant was being transferred to the homicide unit after his identification as Walter Penn, a police officer with him said, "Hey, you've been involved in other murders," to which appellant responded, "Yeah, I was involved in a homicide in Pittsburgh."[2] Whether the officer's statement constituted interrogation, as appellant claims, or was simply a gratuitous remark, as the Commonwealth contends, is immaterial. Appellant's response, which merely confirmed a fact of record, was not introduced at trial. Indeed, all references to

2. The homicide to which appellant referred was the murder of his common-law wife, of which he had been convicted in 1966.

this prior homicide in appellant's subsequent statements were carefully redacted before those statements were introduced into evidence. Moreover, appellant has not shown that police in any way exploited this brief exchange of remarks in the subsequent interrogation of appellant, which was preceded by appropriate *Miranda* warnings. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976). Thus this claim must fail.

■ Appellant next contends that because he was in a drugged and intoxicated condition when he was arrested, he lacked sufficient mental capacity to waive his right to remain silent. This contention was resolved against appellant by the suppression court on the basis of credible evidence, including the fact that appellant possessed the presence of mind to conceal his true identity from police at the time of his arrest. Accordingly, this determination of the suppression court will not be disturbed on appeal. See *Commonwealth v. Holly*, 483 Pa. 371, 396 A.2d 1215 (1979).

■ Appellant further argues that his incriminating statements should have been suppressed because there was unnecessary delay between his arrest and arraignment and because police failed to rewarn him of his *Miranda* rights prior to taking his statements. Appellant was arraigned five hours and twenty minutes after his arrest. Thus, he does not argue that his statements should be excluded on the basis of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) (delay of over six hours between arrest and arraignment renders pre-arraignment statements inadmissible). Rather, he argues on the basis of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), that his statements were tainted by unnecessary delay within this period. The record indicates that the first two hours following appellant's arrest were required for his administrative processing, in large part because appellant had misled police as to his identity, and thus do not constitute unnecessary delay. *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973). During the next three hours, appellant received his *Miranda*

warnings and voluntarily gave two statements to police, the second of which he reduced to writing in his own hand. Because appellant has not shown that the time between his arrest and arraignment involved unnecessary delay, this contention provides no basis for relief. Moreover, the record is clear that appellant began to cooperate with police immediately after receiving his *Miranda* warnings and that the next three hours were occupied continuously with the preparation of appellant's two statements. In the circumstances, there was no requirement that appellant be rewarned of his rights. See *Commonwealth v. Dixon*, 475 Pa. 365, 380 A.2d 765 (1977); *Commonwealth v. Riggins*, 451 Pa. 519, 304 A.2d 473 (1973). Having determined that none of the grounds advanced by appellant warrants the suppression of his incriminating statements, we conclude that these statements were properly admitted at trial.

■ Appellant next contends that eyewitness Juan Henderson, the twelve-year-old son of the victim, should have been found incompetent to testify because he displayed some confusion about dates and locations and did not know the meaning of the word "oath." The standards for determining the competency of a child to testify are set forth in *Rosche v. McCoy*, 397 Pa. 615, 620–21, 156 A.2d 307, 310 (1959):

> "There must be (1) such capacity to communicate, including as it does both an ability to understand questions and to frame and express intelligent answers, (2) mental capacity to observe the occurrence itself and the capacity of remembering what it is that [he] is called to testify about and (3) a consciousness of the duty to speak the truth."

Accord, *Commonwealth v. Fox*, 445 Pa. 76, 282 A.2d 341 (1971). Here, the trial judge conducted an extensive in-camera colloquy with the witness and determined that he possessed the requisite capacity for observation and communication, attributing the witness's confusion over dates and locations to his recent change of residence. The court also determined that the witness was conscious of his duty to tell the truth, notwithstanding his unfamiliarity with the specif-

ic word "oath." A determination of competency will not be disturbed on appeal absent a clear abuse of discretion. *Commonwealth v. Fox*, supra; *Commonwealth v. Mangello*, 250 Pa.Super. 202, 378 A.2d 897 (1977). Because the record reveals no such abuse, appellant's claim that the witness was incompetent cannot prevail.

■ Appellant next challenges the testimony of the Reverend Larry Falcon that, within half an hour of the murder, Juan Henderson told him that appellant had killed his mother. Appellant maintains that the trial court erroneously held the testimony admissible as an excited utterance under the res gestae exception to the hearsay rule. See *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975); *Commonwealth v. Cheeks*, 423 Pa. 67, 223 A.2d 291 (1966). In *Commonwealth v. Pronkoskie*, 477 Pa. 132, 383 A.2d 858 (1978), this Court held that to come within the excited utterance exception to the hearsay rule, a statement must be

" 'a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence in both time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.' "

477 Pa. at 137–38, 383 A.2d at 860, quoting *Allen v. Mack*, 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). See also *Commonwealth v. Stetler*, 494 Pa. 551, 431 A.2d 992 (1981); *Commonwealth v. Little*, 469 Pa. 83, 364 A.2d 915 (1976). Here, the evidence reveals that immediately after witnessing the stabbing of his mother, Juan Henderson rushed to Reverend Falcon, who lived one block away. The two of them ran back to the victim's home. Reverend Falcon told Juan to go and look for the police. Juan returned fifteen minutes later with two police officers, at which time he saw his mother, who was still alive, being carried out on a stretcher. At that moment, in response to a question by one of the officers, Juan stated that appellant had stabbed his mother.

Reverend Falcon testified that Juan was visibly upset and shaken when he returned with the police, and it is reasonable to conclude that the boy had been continuously upset since witnessing the stabbing of his mother. The fact that the boy's statement was not made immediately after the stabbing does not preclude its spontaneity. See *Commonwealth v. Cheeks*, supra, 423 Pa. at 70–71, 223 A.2d at 293. Nor does the fact that the boy's statement was made in response to a question by a police officer rendered it inadmissible as an excited utterance. See *Commonwealth v. Cooley*, supra; *Commonwealth v. Banks*, 454 Pa. 401, 311 A.2d 576 (1973). In the circumstances, the suppression court could reasonably conclude that the statement was made "so near the occurrence in both time and place as to exclude the likelihood of its having emanated in whole or in part from [the boy's] reflective faculties." *Commonwealth v. Pronkoskie*, supra. Thus, the testimony of Reverend Falcon was properly admitted as within the res gestae exception to the hearsay rule.

■ Appellant next argues that the trial court erroneously denied his request for a mistrial because a question asked by the prosecutor during cross-examination of appellant allegedly suggested prior criminal activity by appellant. Throughout both direct and cross-examination, appellant maintained that, because of his ingestion of drugs and alcohol, he could not remember any of the events that took place on the day of the murder. As a result, the prosecutor attempted to impeach appellant's alleged lack of memory with the two written statements which appellant had given to police on the day of his arrest. After appellant had testified that he had not known that the victim was dead until told so by detectives after his arrest, the following exchange occurred:

Q. [By Assistant District Attorney]:

Do you remember being asked this question and giving the following—(reading):

"Question: Did you ever go back to the house after you stabbed Frankie?

Answer: I went back twice. I didn't have no keys. I couldn't get in. I didn't know Frankie was dead. I called University of Pennsylvania Hospital and asked how she was. They said they couldn't give me no information over the phone, they wanted me to come down, they asked me for my name. I wouldn't give it to them. I would hang up. I had other people call also."

A. Not all—I said I didn't know Frankie was dead. I had called to inquire, and I—

Q. Do you remember this—(reading):

"Question: Who did you have call?

Answer: I don't want to name them, if I get them in trouble, they will be an accessory after murder.

Look, I watched TV, news, radio, read the papers, and I didn't see nothing about her dying. I also asked some people in the neighborhood, some said she was dead, some said they saw her. I just was messed up on the whole thing."

Which murder were you talking about?

THE DEFENDANT: Which murder?

MR. FITZPATRICK [Defense Counsel]: I object, Your Honor, only one murder.

THE COURT: Talking about this case.

Defense counsel's motion for a mistrial was denied, as was his request for a curative instruction.

Appellant concedes that the prosecutor was not referring to appellant's prior murder conviction, but rather was seeking to probe appellant's use of the word "murder" in his statement to police. This Court has held that a reference to other criminal activity will be found prejudicial "only if the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Commonwealth v. Povish*, 479 Pa. 179, 188, 387 A.2d 1282, 1287 (1978). Accord, *Commonwealth v. Banks*, supra. Viewing the prosecutor's remark in the context in which it occurred, see *Commonwealth v. Smith*, 490 Pa. 380, 416 A.2d 986 (1980), we agree with the trial court that the isolated remark

did not supply a sufficient basis for a reasonable inference of criminal activity.

Appellant next contends that the Commonwealth improperly impeached a defense witness with evidence of a prior robbery conviction. It is well settled that a witness may be impeached on the basis of a prior conviction only if the crime involves dishonesty or false statement. *Commonwealth v. Burton*, 491 Pa. 13, 417 A.2d 611 (1980) (citing cases). Under existing case law, the witness's prior conviction was properly admitted for impeachment. See *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978).

Appellant additionally complains that this same defense witness was improperly impeached with a prior robbery arrest that did not result in conviction. Although an arrest without conviction may never be the basis of impeachment, *Commonwealth v. Jackson*, 475 Pa. 604, 381 A.2d 438 (1977), this record does not support appellant's assertion that the Commonwealth sought to introduce the witness's prior arrest record. Rather, while the prosecutor was in the midst of questioning the witness, the witness interrupted to say that he had been "charged [with] but not convicted" of the additional robbery offense. As the record does not demonstrate that the prosecutor utilized an arrest to impeach the witness, appellant's claim must be rejected.

Appellant raises several allegations regarding the partiality of his jury, none of which has merit. He first contends that the trial court erred in denying a defense motion for a mistrial when, during voir dire, one prospective juror informed the court that she had overheard two other prospective jurors discussing the case. It is clear from the record that none of these three prospective jurors was seated on appellant's jury. All remaining venirepersons replied in the negative when asked by the court whether they had heard anyone discuss the case or whether they had discussed it themselves. Thus, appellant's request for a mistrial was properly denied. See *Commonwealth v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979).

Appellant next argues that because a strike in the sheriff's office temporarily prevented appellant from being present at voir dire, prospective jurors could have inferred that he was incarcerated. Appellant also contends that, during the jury's deliberation, one of the jurors may have observed appellant in handcuffs by looking out a window, across a courtyard, and through another window. As the record provides no support for either of these contentions, they must be rejected.

Appellant claims that the trial court erred in refusing to grant his request for a mistrial when the trial court prefaced its additional charge to the jury on the possible legal effects of intoxication with the words "whether you need it or not." In its initial charge to the jury, the court had explained in detail the legal effect of intoxication on a finding of intent to kill. When the jury requested that the court "repeat the charge concerning first and third degree murder," the court complied, after which defense counsel asked the court to repeat its charge on the effect of intoxication. Acceding to this request, the court began: "Although I have given you the definitions of first and third degree murder, it may be relevant to go into another phase, whether you need it or not." The court then elaborately reinstructed the jury on the effect of alcohol and drugs. When the charge is viewed in its entirety, as it must be, *Commonwealth v. Fell*, 453 Pa. 531, 309 A.2d 417 (1973), it is clear that the trial judge did not invade the province of the jury or affect its ability to render a fair and impartial verdict. Compare *Commonwealth v. Archambault*, 448 Pa. 90, 290 A.2d 72 (1972) (trial judge impermissibly expressed opinion as to defendant's guilt). The judge's comment merely reflected the fact that the jury had not asked to be recharged on that particular issue.

Appellant next contends that his trial counsel was ineffective in failing to move for a mistrial when the jury announced that it was deadlocked after two days of deliberation. It is well settled that "[t]he length of the deliberation of a jury is wisely left to the sound discretion of the trial Judge and we reverse only if we find ... abuse of

discretion, or that the verdict was the product of coercion or of an overworked and fatigued jury." *Commonwealth v. Campbell*, 445 Pa. 488, 495–96, 284 A.2d 798, 801 (1971). Accord, *Commonwealth v. Gartner*, 475 Pa. 512, 531, 381 A.2d 114, 124 (1977); *Commonwealth v. Ford*, 451 Pa. 81, 85, 301 A.2d 856, 858 (1973). See *Commonwealth v. Santiago*, 492 Pa. 297, 424 A.2d 870 (1981). Here, the court charged the jury, in accordance with the guidelines recommended by the ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury § 5.4(a) (2d ed. Approved Draft 1978).[3] At the request of defense counsel, the court also transferred the jury to an airconditioned room. The following day the jury requested additional instructions on the elements of murder of the first and third degrees, and on the next day returned its verdicts. As the record reveals no abuse of discretion, this claim affords no basis for relief.

 So, too, we reject appellant's claim that his trial counsel was ineffective in failing to raise in post-verdict motions the application of Pa.R.Crim.P. 308(a). Prior to January 1, 1978, this rule stated that the failure to answer a pre-trial motion was deemed an admission of the facts averred in the motion. The rule was amended to its present form on June 29, 1977, effective as to all cases where the indictment or information is filed on or after January 1, 1978:

"(a) No answer to a pretrial motion is required unless ordered by the court. Failure to file an answer shall not constitute an admission of the well-pleaded facts averred in the motion unless an answer has been ordered by the court. Any answer shall be filed not later than seven (7) days after service of a pretrial motion, or within the time directed by the court."

Pa.R.Crim.P. 308(a). As appellant's informations were filed on February 9, 1978, the former rule had no application to

---

**3.** These guidelines were specifically approved by this Court in *Commonwealth v. Spencer*, 442 Pa. 328, 337, 275 A.2d 299, 304, (1971). See *Commonwealth v. Gartner*, supra, 475 Pa. at 529 n. 10, 381 A.2d at 123 n. 10.

appellant's trial, and a motion seeking the enforcement of the former rule would properly have been denied. It is settled that counsel will not be held ineffective for failing to raise a meritless claim. *Commonwealth v. Rice*, 456 Pa. 90, 318 A.2d 705 (1974). See *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

■ Appellant's contention that the verdict is against the weight of the evidence must also fail. On the basis of appellant's incriminating statements and the testimony of eyewitness Juan Henderson, the jury could clearly have found beyond a reasonable doubt that appellant was guilty of murder of the first degree and possession of an instrument of crime. See, e.g., *Commonwealth v. Fairell*, 476 Pa. 128, 381 A.2d 1258 (1977).

Appellant's remaining contentions, that the trial judge displayed bias against appellant and his counsel, and that trial counsel was ineffective in failing to object to certain leading questions posed by the prosecutor, are without support on the record and are therefore rejected.

Because we conclude that none of appellant's allegations of error warrants the granting of relief, we affirm judgments of sentence.

Judgments of sentence affirmed.