454 A.2d 1004
**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Francis JENKINS, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1982.
Decided Dec. 31, 1982.

Eric B. Henson, Deputy Dist. Atty., Philadelphia, for appellant.

Charlotte Nichols, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

NIX, Justice.

This is an interlocutory appeal [1] by the Commonwealth challenging a pretrial order suppressing an inculpatory custodial statement given by appellee, Francis Jenkins, relating to the circumstances surrounding the death of Ms. Betty Homer. The suppression court concluded that the actions of the Commonwealth constituted "an improper prosecutorial design to circumvent the rule of *Commonwealth v. Davenport,* [471 Pa. 278, 370 A.2d 301 (1977)], [and as a result] must ... be held ineffective to preserve the evidentiary utility of defendant's incriminating admissions against suppression." (Record—16a). We disagree for the reasons that follow.

The Philadelphia Police were directed to a residence in response to a radio call and found upon their arrival the bruised dead body of the victim in a bedroom in the home. During the course of the ensuing investigation, appellee, who was the only other person in the home at the time of the arrival of the police, was arrested. After being warned of his rights, appellee initially maintained that he found Ms. Homer dead upon returning to the house. Approximately four and one-half hours after his arrest appellee admitted

1. We assume jurisdiction of this case pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 722, the Order of July 25, 1980 being deemed a final order in light of *Commonwealth v. Bosurgi,* 411 Pa. 56, 190 A.2d 304 (1963) and *Commonwealth v. Kunkel,* 254 Pa.Super. 5, 385 A.2d 496 (1978).

striking the victim and causing her to fall and strike her head. When it became apparent that it would be impossible to find an available judicial officer to arraign appellee, he was released from custody at 9:20 a.m. five hours after his arrest. Appellee was re-arrested the following day and arraigned within two and one-half hours.

During the suppression proceedings the Commonwealth attempted to convince the court that the police at the direction of the district attorney's representative had made the decision to release appellee because of the prosecution's uncertainty as to the strength of the case against him at that point. The record of that hearing clearly supports the court's rejection of that view. The suppression court was most astute in concluding that appellee was released primarily to avoid the consequences of our "six hour" rule in view of the difficulty being encountered in arranging for appellee's arraignment within the prescribed time limits.

The error in the suppression court's analysis flowed from the mistaken concept that our rule announced in *Davenport* established a rigid standard impervious of the purposes it was designed to serve. If such a premise were to be correct then the Commonwealth's complaint that the rule "works to exclude probative, reliable evidence despite the absence of police abuse" would have substantial merit. However, it is clear that the premise is false and the criticism unjustified.

Our concern with unnecessary delay in arraigning criminal defendants after their arrest was first addressed in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and its progeny.[2] *See also*, Pa.R.Crim.P. 122 and 130 (formerly Rule

2. *Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154 (1982); *Commonwealth v. Smith*, 487 Pa. 626, 410 A.2d 787 (1980); *Commonwealth v. McGeachy*, 487 Pa. 25, 407 A.2d 1300 (1979); *Commonwealth v. Williams*, 484 Pa. 590, 400 A.2d 1258 (1979); *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979); *Commonwealth v. Bowen*, 482 Pa. 453, 393 A.2d 1194 (1978); *Commonwealth v. Williams*, 476 Pa. 344, 382 A.2d 1202 (1978); *Commonwealth v. Morton*, 475 Pa. 374, 380 A.2d 769 (1977); *Commonwealth v. Lasch*, 464 Pa. 259, 346 A.2d 547 (1975); *Commonwealth v. Bey*, 462 Pa. 533, 341 A.2d 907 (1975); *Commonwealth v. Doamaral*, 461 Pa. 517, 337 A.2d 273 (1975); *Commonwealth v. Cullison*, 461 Pa. 301, 336

116 and 118). In these decisions we developed a rule of exclusion that rendered inadmissible incriminating evidence extracted from an accused during periods of unnecessary delay. *See e.g., Commonwealth v. Smith,* 487 Pa. 626, 410 A.2d 787 (1980); *Commonwealth v. McGeachy,* 487 Pa. 25, 407 A.2d 1300 (1979); *Commonwealth v. Morton,* 475 Pa. 374, 380 A.2d 769 (1977); *Commonwealth v. Bey,* 462 Pa. 533, 341 A.2d 907 (1975); *Commonwealth v. Barilak,* 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973). The evil which prompted this development was a recognition of the coercive environment that can be established by interminable custodial questioning.

In order to enforce the prompt arraignment requirement this Court held in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), that evidence obtained during an unnecessary delay between arrest and preliminary arraignment is inadmissible at trial. This rule was adopted . . . to guard against the coercive influence of custodial interrogation, . . . .

*Commonwealth v. Davenport, supra,* 471 Pa. at 284, 370 A.2d at 305.

*Cf. Commonwealth v. Cherry, supra,* 457 Pa. at 205, 321 A.2d at 613, (". . . *Futch* [was] specifically designed to put a stop to the practice of arresting an individual and holding him during a lengthy period while continuing the investigation before arraigning him.") *See also, Commonwealth v. Coley,*

A.2d 296 (1975); *Commonwealth v. Barilak,* 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974); *Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Sanders,* 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); *see Geiger Appeal,* 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973).

466 Pa. 53, 66, 351 A.2d 617, 622 (1976). While the *Futch* formulation was not designed to terminate police interrogation, it was intended to interrupt it after a reasonable period of time to allow the suspect to be advised of his custodial rights by an impartial judicial officer, as opposed to police officials, and in appropriate cases to establish the conditions of his release pending trial.

We have previously set forth the dangers of an unnecessary delay as follows:

. . . The danger of any such unnecessary . . . restriction of liberty diminishes significantly when a citizen is brought swiftly before a neutral judicial authority, there to be informed of the charges and provided with an immediate and reasonable opportunity to regain his liberty by the posting of a reasonable .bail. Thus, the delay between arrest and arraignment must be closely examined. The only delay permissible is that reasonably required for the administrative processing of the accused citizen. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417, 418 (1972). Delay beyond that is unreasonable and constitutes a denial of a citizen's right to know the nature of the charges against him and to receive an immediate and reasonable opportunity to regain his freedom by the posting of bail. *Commonwealth v. Dixon,* 454 Pa. 444, 446–47, 311 A.2d 613, 614 (1973). *See also Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547,. 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973). *Commonwealth v. McGeachy, supra,* 487 Pa. at 28, 407 A.2d at 1301.

From the outset we stressed that it was not intended to be a mechanical rule to enforce compliance with our procedural rules by insisting upon a reasonable relationship between the delay and the evidence sought to be excluded. *Commonwealth v. Futch, supra; accord, Commonwealth v. Smith, supra; Commonwealth v. Bey, supra; Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974); *Commonwealth v. Williams, supra; Commonwealth v. Dixon, supra; Common-*

*wealth v. Wayman, supra; Commonwealth v. Dutton, supra; Commonwealth v. Tingle, supra.* Our concern with the coercive aspect of the delay was reflected also in our determinations as what constituted an "unreasonable delay." *Commonwealth v. McGeachy, supra; Commonwealth v. Bowen, supra; Commonwealth v. Morton, supra; Commonwealth v. Barilak, supra; Commonwealth v. Sanders,* 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Cherry, supra; Commonwealth v. Williams, supra; Commonwealth v. Dixon, supra; Commonwealth v. Tingle, supra.* The *Futch* rule was deliberately made flexible to provide the opportunity for a court to exclude only that evidence which was clearly tainted by the coercive atmosphere of the custodial interrogation. While this flexibility was salutary in providing our trial courts the leeway to separate evidence tainted by that coercive influence from that which resulted from volunteered self compelled utterances, *Commonwealth v. Rowe, supra; cf. Commonwealth v. Penn, supra; Commonwealth v. Smith, supra; Commonwealth v. Van Cliff, supra,* experience proved it to be difficult for law enforcement officials to administer.[3]

As a result this Court adopted the more definitive articulation set forth in *Commonwealth v. Davenport, supra.*

This rule will assure more certain and even-handed application of the prompt arraignment requirement, and will provide greater guidance to trial courts, the bar and law enforcement authorities. Such a rule will simplify the task of determining the admissibility of statements taken before arraignment and thereby further judicial economy. It will also lessen the burden on prosecution and defense resources. In many cases this rule should eliminate the need for pre-trial litigation of the admissibility of statements by the defendant and thus help reduce pre-trial delay. Moreover, a rule based on the length of delay between arrest and arraignment will better serve to deter violations of the prompt arraignment requirement and to

**3.** *The Pennsylvania Constitution and the Protection of Defendant's Rights, 1969–1980: A Survey,* 42 U.Pitt.L.Rev. 269, 303 (1981) (". . . [Futch] created more problems than it solved . . .").

ensure that the protections afforded at preliminary arraignment are made available without unnecessary delay. 471 Pa. at 287–288, 370 A.2d at 306.

Nevertheless our objective remains the same. At no time did we wish to cut off freely volunteered confessions of guilt, nor did we wish to impede legitimate law enforcement efforts. The primary purpose sought to be obtained was to discourage the obtaining of incriminatory information through coercive means. As observed in *Davenport:*

> The prohibition ... against any unnecessary delay between an arrest by an accusatorial authority and a preliminary arraignment minimizes the possibility of any unnecessary abridgement of a citizen's liberty. Such an abridgement would, of course, be unconstitutional. The danger of any such unnecessary and unconstitutional restriction of liberty diminishes significantly when a citizen is brought swiftly before a neutral judicial authority. . . .

*Id.,* 471 Pa. at 283–84, 370 A.2d at 305–05, *quoting* from *Commonwealth v. Dixon,* 454 Pa. 444, 446, 311 A.2d 613, 614 (1973).

The argument that the Davenport formulation was intended to be an inflexible standard ignores that in *Davenport* itself an exigent circumstances qualification was recognized. *See* n. 7. In the decisions that followed the exigent circumstances qualification has been developed to remove the six hour bar where the underlying objectives would not be served by such an exclusion. *See, Commonwealth v. Ryles,* 274 Pa.Superior Ct. 547, 418 A.2d 542 (1980) (unavailability of judge constitutes exigent circumstances warranting 25-minute delay beyond 6 hours in arraigning defendant). *Cf. Commonwealth v. Bennett,* 498 Pa. 656, 658, 450 A.2d 970, 971–972 (1982) (Flaherty, J. concurring, joined by Hutchinson, J.) (". . . delay of more than six hours should not *per se* render . . . prearraignment statement inadmissible. . .").

Interestingly, both the suppression court and appellee implicitly concede that if the police had caused appellee to remain in custody, even beyond the six hour limit, while they

were attempting to secure a judicial officer the case would probably have fallen within the exigent circumstances dispensation. We agree with this conclusion assuming the Commonwealth's ability to establish its diligent effort in seeking a timely arraignment. However, we do not accept the further conclusion of both the suppression court and appellee that the Commonwealth's failure to rely upon proof of exigent circumstances requires us to ignore that the avenue elected was in no way offensive to the underpinnings of *Davenport* and *Futch*.

To the contrary, the course chosen by the Commonwealth in this case did more to achieve the objectives of the rule than attempting to rely upon the ability to establish exigent circumstances for the failure to observe the rule. In this case the complete release of the defendant within the six-hour period accomplished the purposes sought to be achieved by the requirement of a prompt arraignment. The fact that the authorities elected to take this course of action to avoid the consequences of a violation of the prompt arraignment rule does not require the condemnation of the procedure where the purposes sought to be achieved by the rule were in fact accomplished. In view of the Commonwealth's inability, through no fault of its own, to comply with the strict letter of the rule we are satisfied that the alternative chosen here was a reasonable one[4] and that no purpose would be served by applying the evidentiary bar in this case.

Accordingly, the Order of the Suppression Court is reversed and the cause remanded for trial.

McDERMOTT, J., files a concurring opinion.

McDERMOTT, Justice, concurring.

Although I agree with the result reached by the majority today, I write separately to delineate my opposition to this

---

4. We assume that police officials were satisfied that the temporary release of this appellee did not pose a danger to the community and that there was no serious threat of his availability for the service of future process.

152

Court's continued reliance on *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977).

I repeat the view of the six hour rule as stated in *Commonwealth v. Bennett,* 498 Pa. 656, 450 A.2d 970 (1982) (McDermott, J., concurring).

A prophylactic rule, such as the six hour rule, is a classic of technicality. Classic because it applies to all circumstances, no matter what distinctions of justice may inhere in the facts of a given case.

498 Pa. at 660, 450 A.2d 970 at 972.

We must therefore discard *Davenport* and return to a more flexible approach. This will enable our courts to suppress statements where they were obtained through coercion rather than watch the clocks and count the hours.