512 A.2d 704

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Carson Lynn BRUENING.**

Superior Court of Pennsylvania.

Argued April 29, 1986.

Filed July 14, 1986.

Petition for Allowance of Appeal Denied
Dec. 29, 1986.

604

David J. Flower, Assistant District Attorney, Somerset, for Commonwealth, appellant.

Sandra W. Upor, Somerset, for appellee.

Before DEL SOLE, MONTEMURO and POPOVICH, JJ.

POPOVICH, Judge:

The Commonwealth appeals from the order of the Court of Common Pleas of Elk County suppressing evidence secured prior to the arraignment of the defendant-appellee, Carson Lynn Bruening. We reverse.

The Commonwealth's right to appeal the instant interlocutory order was re-affirmed recently in *Commonwealth v. Dugger*, 506 Pa. 537, 545–46, 486 A.2d 382, 386 (1985) ("We granted the Commonwealth an appeal, and defined it a substantial handicap whenever the Commonwealth is denied the use of *all* their evidence. We did not say that the Commonwealth was obligated to demonstrate the need." (Emphasis in original)).

Since the Commonwealth is appealing the adverse ruling of a suppression court, we, as a reviewing court, "must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. Hamlin*, 503 Pa. 210, 216, 469 A.2d 137, 139 (1983). So viewed, the evidence reveals that at approxi-

mately 10:30 p.m. on November 14, 1984, Trooper Clay Mankamyer of the Pennsylvania State Police was engaged in routine traffic patrol along Route 219 in Somerset County. The defendant's vehicle was observed swerving from the right lane to the left lane and, occasionally, the vehicle would proceed down the middle of the south bound lanes of the four-lane highway. After following the defendant for .3 miles, the trooper stopped the defendant and conducted a field sobriety test which the defendant failed. He was placed under arrest for, inter alia, driving while intoxicated (75 Pa.C.S. § 3731), and, thereafter, he was transported to the State Police barracks in Somerset to have his blood-alcohol level measured.

Upon arrival at the barracks, the defendant was advised of his rights, after which he informed the police that he had consumed six (6) beers between 6:00 p.m. and the time of his arrest. His subsequent refusal to submit to a breathalyzer or to contact anyone to provide him with transportation home prompted Trooper Mankamyer to contact the magistrate, "who suggested that the officer lodge the defendant in the county jail. The duty magistrate indicated that he was not available to provide the defendant with a preliminary arraignment." (Commonwealth's Brief at 5)

The defendant was housed in the county jail from 12:00 midnight until his release at 1:30 a.m. on the morning of November 15, whereupon he was driven home by two State Troopers. During his stay in jail, "no tests were performed ... and no statements were taken from [the defendant.]" *Id.*

After the filing of charges, the defendant petitioned the Somerset County Court of Common Pleas for a change of venue. It appears that the case received extensive media coverage, prompted "mass meetings", generated letters to the local newspaper "condemning the defendant in particular and drunk driving in general and supporting the actions of the arresting officer", who, as a result of the arrest, "was suspended from duty and transferred to another coun-

ty." (See Omnibus Pre-Trial Motion For Relief, Points 3 & 8)

The matter was certified to the Supreme Court of Pennsylvania, which, by order dated May 20, 1985, transferred the case to the 59th Judicial District (Cameron and Elk Counties).

The defendant's motion to quash and/or suppress was heard by President Judge Paul B. Greiner. In a memorandum opinion and order dated May 29, the motion to quash was denied, but, on the strength of Pa.R.Crim.P. 130 and *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), any "statements made by the defendant, including but not limited to his refusal to take the breath test," were suppressed. This appeal followed.

In order to appreciate our ruling, one must understand the necessity out of which *Davenport* was born.

At first, the conduct of the police was regulated by *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), which is now embodied in Rule 130(a), whereby inculpatory evidence secured prior to and as a result of a prearraignment delay was excluded from trial, provided: 1) the delay was unnecessary; 2) the evidence obtained was prejudicial; and 3) the incriminating evidence was reasonably related to the delay. *Commonwealth v. Williams*, 455 Pa. 569, 572, 319 A.2d 419, 420 (1974). Under *Futch*, the only time period relevant to this determination was the amount of time "the accused [was] in custody up until the incriminating evidence [was] obtained. It ... [was] ludicrous to suggest that the time following the statement was related to its procurement." *Commonwealth v. Smith*, 487 Pa. 626, 631, 410 A.2d 787, 790 (1980).

However, the experience following *Futch* prompted our Supreme Court, in an attempt to bring more certainty, simplification and even-handed application of the prompt arraignment requirement, to adopt a rule which fixed a six-hour period as the time within which an accused had to be arraigned following his arrest. Failure to do so would

render inadmissible any statement obtained during this time-frame. See, e.g., *Commonwealth v. Bennett*, 498 Pa. 656, 450 A.2d 970 (1982) (new trial awarded where defendant's voluntary statement should have been suppressed where he was arraigned six hours and two minutes after his arrest); *Commonwealth v. Blady*, 492 Pa. 285, 424 A.2d 864 (1980) (trial court's suppression of confession affirmed where the defendant arraigned six hours and ten minutes after his arrest).

Thus, the law evolved from the three-pronged test enunciated in *Futch* to the fixed time-table adopted in *Davenport;* nevertheless, the objective of our Supreme Court remained the same, i.e., to discourage the obtaining of incriminating information through coercive means. *Commonwealth v. Jenkins*, 500 Pa. 144, 454 A.2d 1004 (1982). Likewise, one cannot discount some of the other objectives sought to be achieved by the implementation of a prompt arraignment following arrest, e.g., citizen's right to know the nature of the charges against him and to receive an immediate and reasonable opportunity to regain his freedom by the posting of bail. *Commonwealth v. McGeachy*, 487 Pa. 25, 28, 407 A.2d 1300, 1301 (1979).

We cannot dispute nor do we condone the defendant's confinement in the county jail without the benefit of an arraignment "or without judicial process or commitment papers of any type whatsoever." (Defendant's Brief at 6) The mere fact that the accused may have been obstreperous and unwilling to secure transportation did not require his incarceration. He could have been driven the one-half-mile distance to his home, as ultimately occurred approximately three hours after his arrest and one-and-a-half-hours following incarceration, by the State Police.

Despite the restraint of the defendant's liberty, we do not equate it, under the particular circumstances here, with the type of conduct sought to be purged from the judicial system by our Supreme Court's exclusionary rule under either *Davenport* or *Futch* to accomplish the goal of a prompt arraignment.

Parenthetically, we note that if the police had opted to retain the defendant behind bars, even beyond the six-hour limit, while they were attempting to locate a judicial officer the case would probably have fallen within the "exigent circumstances" dispensation referred to in footnote 7 in *Davenport. Commonwealth v. Jenkins, supra; Commonwealth v. Devan,* 338 Pa.Super. 95, 487 A.2d 869 (1985); *Commonwealth v. Ryles,* 274 Pa.Super. 547, 418 A.2d 542 (1980).

More to the point, however, we find the release of the defendant, well within six hours of his arrest, to be no violation of *Davenport* or Rule 130, and his restraint can be said to be no more than an error in judgment by the authorities not warranting the harsh consequences attendant to suppression of the evidence. As our Supreme Court stated in a similar context:

> ... the course chosen by the Commonwealth in this case did more to achieve the objectives of the rule than attempting to rely upon the ability to establish exigent circumstances for the failure to observe the rule. In this case the complete release of the defendant within the six-hour period accomplished the purposes sought to be achieved by the requirement of a prompt arraignment. The fact that the authorities elected to take this course of action to avoid the consequences of a violation of the prompt arraignment rule does not require the condemnation of the procedure where the purposes sought to be achieved by the rule were in fact accomplished. In view of the Commonwealth's inability, through no fault of its own, to comply with the strict letter of the rule we are satisfied that the alternative chosen here was a reasonable one [4] and that no purpose would be served by applying the evidentiary bar in this case.

Accordingly, the Order of the Suppression Court is reversed and the cause remanded for trial.

[4] We assume that police officials were satisfied that the temporary release of this appellee did not pose a danger to the community and that there was no serious threat of his availability for the service of future process.

*Commonwealth v. Jenkins, supra,* 500 Pa. at 149–52 & n. 4, 454 A.2d at 1007–08 & n. 4.

As in *Jenkins,* the defendant's release, albeit here delayed somewhat by a stint in jail for one-and-a-half-hours, was prompted by the inability to locate a judicial officer to conduct an arraignment. See Commonwealth's Memorandum Of Law at 2, wherein it is written that: "Defendant was incarcerated for a short period of time and then released upon the execution of an after-hours misdemeanor form, pursuant to Pa.R.Cr.P. No. 130."

The Comment to Rule 130 gives guidance as to what course to pursue where a defendant has been arrested without a warrant for driving while intoxicated. It recommends one's release from custody when an officer deems it appropriate, rather than presentment before a magistrate for arraignment. Some factors which can be taken into account to decide if release from custody is appropriate are: 1) whether the defendant resides in the community; and 2) whether he can safely be released without danger to himself or others. However, the Comment makes no mention, nor is it anywhere written—except as a courtesy offered by police which has developed over the years, as to who should drive the defendant home when, as here, he lives a short distance away from the barracks.

As referred to earlier, there is no indication from the record that the defendant was inhibited in any way from seeking a means home separate from that provided for, later, by the State Police. Thus, the defendant was ostensibly offered, at least from our reading of the record, the opportunity to leave the barracks. He, apparently, chose not to do so by obtaining transportation, be it public or private, to make his way home. This is evidenced by the fact that the State Police had to provide him with a means home later in the evening—he could not drive his own vehicle since he was cited for driving while intoxicated.

Suffice it to say, from our review of the facts and the applicable case law, the actions of the suppression court were improper. Accordingly, we reverse the order entered

below and remand for a continuation of the case through the judicial process. Jurisdiction is not retained.