430 A.2d 994

COMMONWEALTH of Pennsylvania, Appellant,

v.

Vernon BENNETT.

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed June 5, 1981.

Petition for Allowance of Appeal Granted Jan. 12, 1982.

Michele A. Goldfarb, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellee.

Before WICKERSHAM, HOFFMAN and VAN der VOORT, JJ.

HOFFMAN, Judge:

This case requires us to decide whether a statement obtained from an accused in violation of the six-hour rule of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and therefore inadmissible in the Commonwealth's case-in-chief, may be used to impeach the accused's trial testimony. We conclude that such a statement may be used for impeachment purposes.

On February 1, 1979, at 9:45 p. m., defendant-appellee was arrested and taken to the West Detective Division of the Philadelphia Police Department. At about 10:45 p. m., the police obtained a signed, written statement from defendant. Defendant was arraigned at 3:47 the following morning, six hours and two minutes after his arrest.[1] He subsequently filed a motion to suppress his statement on the ground that it had been obtained in violation of *Commonwealth v. Davenport, supra.* The lower court denied the motion. After a

1. The record is silent as to the precise reason for the delay in arraigning defendant. The record reveals only that a police officer ignored instructions to have defendant arraigned within six hours of his arrest.

nonjury trial at which the Commonwealth did not introduce the statement and defendant did not testify, defendant was convicted of rape and simple assault. In post-verdict motions, defendant again challenged the admissibility of his statement. The lower court concluded that it had erred in denying defendant's suppression motion because the statement has been obtained in violation of the *Davenport* rule. Additionally, the court concluded that statements inadmissible under *Davenport* should not be used to impeach an accused's trial testimony. Although defendant herein did not testify at trial, the court accepted his argument that he had been prejudiced by its refusal to suppress his statement because his decision not to testify had been based on his fear that the Commonwealth would use the statement to impeach his credibility. The court therefore granted defendant's motion for a new trial. The Commonwealth then took this appeal.

"The Pennsylvania Rules of Criminal Procedure require that an individual who is arrested be brought before a judicial officer for preliminary arraignment without unnecessary delay. Pa.R.Crim.P. 122, 130." *Commonwealth v. Davenport*, 471 Pa. at 282, 370 A.2d at 304. In *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), our Supreme Court held that evidence obtained in violation of the prompt arraignment requirement is inadmissible at trial. The Supreme Court subsequently established a three-part test for determining whether evidence obtained during a prearraignment delay must be suppressed. *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974). To eliminate the problems encountered in applying that test, our Supreme Court in *Commonwealth v. Davenport, supra,* established the following rule: "If the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial." 471 Pa. at 286, 370 A.2d at 306.

The lower court concluded that defendant's statement should have been suppressed because his preliminary arraignment was not held "within six hours of arrest . . . ."

*Id.* The Commonwealth argues, however, that the *Davenport* rule should not be "mechanically" applied here because defendant's arraignment was held only two minutes after the expiration of the six-hour period and was caused by "a trivial administrative oversight." Brief for the Commonwealth at 10. As the lower court recognized, however, the *Davenport* rule would have to be rewritten to uphold the Commonwealth's argument. That we refuse to do. Moreover, were we to find no violation of the *Davenport* rule in this case, we would open the door to a host of claims involving assertedly de minimis *Davenport* violations and be forced to engage in precisely the sort of case-by-case determinations which our Supreme Court sought to avoid by adopting an unambiguous rule.[2] Accordingly, we agree with the lower court that defendant's statement was obtained in violation of the *Davenport* rule. We shall now determine whether a statement inadmissible under *Davenport* may be used to impeach the accused's trial testimony.

In *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d (1971), the United States Supreme Court held that a statement which is inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 294 (1966), may be used to impeach the accused's trial testimony if "the trustworthiness of the [statement] satisfies legal standards." 401 U.S. at 224, 91 S.Ct. at 645. In reaching its decision, the Court relied in part upon *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), in which it had held that physical evidence obtained in violation of an accused's Fourth Amendment rights, though inadmissible in the prosecution's case-in-chief, may be used to impeach the accused's credibility. Additionally, the *Harris* Court stated:

> The impeachment process here undoubtedly provided valuable aid to the jury in assessing [defendant's] credibility, and the benefits of this process should not be lost, in our

---

2. Although this Court has held that the *Davenport* per se rule applies "'in the absence of exigent circumstances,'" *Commonwealth v. Ryles*, 274 Pa.Super. 547, 551, 418 A.2d 542, 543 (1980) (quoting *Davenport*, 471 Pa. at 286 n. 7, 370 A.2d at 306 n. 7), the Commonwealth does not argue that "exigent circumstances" exist here.

view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made available to the prosecution in its case in chief.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury.... Having voluntarily taken the stand, [defendant] was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.

401 U.S. at 225, 91 S.Ct. at 645. *Accord, Oregon v. Hass,* 420 U.S. 714, 721–22, 95 S.Ct. 1215, 1220–21, 43 L.Ed.2d 570 (1975). *Cf. New Jersey v. Portash,* 440 U.S. 450, 99 S.Ct. 1292, 59 L.Ed.2d 501 (1979) (Balancing of incremental deterrence of police illegality and strong policy against permitting perjury employed by Court in *Harris* and *Hass* is impermissible where prosecution seeks to use immunized defendant's grand jury testimony to impeach defendant's testimony at his subsequent trial).

In *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975), our Supreme Court held that under the Pennsylvania Constitution a statement obtained in violation of an accused's *Miranda* rights cannot be used to impeach his trial testimony. In refusing to follow *Harris,* the Court adopted the reasoning of the concurring opinion in *Commonwealth v. Woods,* 455 Pa. 1, 7, 312 A.2d 357, 360 (1973), in which Justice ROBERTS, joined by Justices O'BRIEN and NIX, stated:

*Harris*-type use of constitutionally infirm confessions forces upon an accused a grisly Hobson's choice. Either an accused must forgo his right to testify, or he must risk the sure and devastating prejudice occasioned by the prosecution's use of the impermissibly obtained confession at the critical rebuttal stage.

462 Pa. at 249, 341 A.2d at 64. Believing it necessary "to decide the issue in terms that will resolve the question in *all* situations," *id.*, 462 Pa. at 248, 341 A.2d at 64 (emphasis in original), the Court stated: "We are of the opinion that any statement of a defendant declared inadmissible for any reason by a suppression court cannot be used for the purpose of impeaching the credibility of a defendant who elects to testify on his own behalf at trial." *Id.*, 462 Pa. at 248–49, 341 A.2d at 64.

Although the Court's broad language in *Triplett* could be construed as applying not only to constitutionally infirm statements but also to statements obtained in violation of a rule which is not constitutionally mandated, such as *Davenport*, the Court subsequently clearly indicated that it had not intended such a result. In *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977) (overruled on other grounds, *Commonwealth v. Tarver*, 493 Pa. 320, 327, 426 A.2d 569, 573 (1981)), decided sixteen days before *Davenport*, the Court stated:

> We have never had occasion to consider whether the exclusionary rule of *Futch*, established pursuant to our supervisory authority and designed to discourage excessive detention in police custody of persons under suspicion of crime before bringing formal charges, should extend to the use of confessions for impeachment purposes. The exclusion involved in *Commonwealth v. Triplett*, ... of course, was based on the constitutional infirmity of the statement there sought to be used for impeachment.

471 Pa. at 497 n. 4, 370 A.2d at 715 n. 4. The Court did not decide the issue, however, because defendant-appellant had not preserved it for appellate review.

The *Davenport* rule, like the *Futch* rule, was based on our Supreme Court's supervisory authority, rather than either the Federal or Pennsylvania Constitution. *Davenport*, 471 Pa. at 286, 370 A.2d at 306. It too was intended to "discourage excessive detention in police custody of persons

under suspicion of crime before bringing formal charges . . . ." *See id.,* 471 Pa. at 287–88, 370 A.2d at 306 ("[A] rule based on the length of delay arrest and arraignment will better serve to deter violations of the prompt arraignment requirement and to ensure that the protections afforded at preliminary arraignment are made available without unnecessary delay."). In concluding that the Commonwealth should not be permitted to use a statement obtained in violation of *Davenport* to impeach the accused's trial testimony, the lower court reasoned that police misconduct would not be deterred unless the statement is held to be inadmissible at trial for all purposes. While we share the lower court's concern with the need to deter police misconduct, we believe that substantial weight should be given to the judicial system's interest in deterring perjury and promoting the truth-determining process. *See Oregon v. Hass,* 420 U.S. at 722, 95 S.Ct. at 1221 ("We are, after all, always engaged in a search for truth in a criminal case so long as the search is surrounded with the safeguards provided by our Constitution."). Where an accused's statement has been obtained in violation of his constitutional rights, our Supreme Court has decided that the accused should not have to choose between forgoing his right to testify and exercising that right with the risk that the tainted statement will be used to impeach his testimony. Where as here, however, the accused's statement has no constitutional infirmity, we believe that the accused's interests must give way to the judicial system's interest in deterring perjury and promoting the truth-determining process. As the Commonwealth states in its brief: "If an accused chooses to take the stand and substantially and clearly contradicts a voluntary statement previously made, the judiciary should not insist that the fact finder be prevented from knowing of the inconsistency. Such a result suggests that the courts will sanction perjury as a necessary consequence of a mere violation of a procedural rule." Brief for the Commonwealth at 15. Consequently, we hold that a statement obtained in violation of

the *Davenport* rule may be used to impeach the credibility of the accused if he testifies at trial.[3]

Although we have determined that defendant's statement was obtained in violation of *Davenport,* defendant was not prejudiced by the lower court's initial error in refusing to suppress it because the Commonwealth did not refer to it at trial. Moreover, because the statement could have been used to impeach defendant's credibility, defendant's claim that he chose not to testify because he believed that the Commonwealth would use his statement does not entitle him to a new trial. Accordingly, we reverse the lower court's order granting defendant a new trial.

Order reversed and case remanded for consideration of defendant's other post-verdict motions.

---

**3.** Of course, a statement obtained in violation of the *Davenport* rule cannot be used for impeachment purposes if it is shown to be coerced or involuntary. *See New Jersey v. Portash, supra* (coerced or involuntary statement cannot be used for impeachment under *Harris*). In the instant case, defendant has not alleged that his statement was coerced or involuntary, and the record does not support such a claim.