The Order of the Court of Common Pleas is affirmed.

450 A.2d 970

**COMMONWEALTH of Pennsylvania**

v.

**Vernon BENNETT, Appellant.**

Supreme Court of Pennsylvania.

Argued May 19, 1982.

Decided Oct. 5, 1982.

John W. Packel, Asst. Public Defender, Karl Baker, Philadelphia, for appellant.

Robert B. Lawler, Eric B. Henson, Asst. Dist. Attys., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, McDERMOTT and HUTCHINSON, JJ.

## OPINION

PER CURIAM:

Order affirmed.   287 Pa.Super. 485, 430 A.2d 994.

FLAHERTY, J., filed a concurring opinion in which HUTCHINSON, J., joined.

McDERMOTT, J., filed a concurring opinion in which LARSEN, J., joined.

FLAHERTY, Justice, concurring.

Appellant Vernon Bennett was arrested on February 1, 1979 at 9:45 p. m. and taken to the West Detective Division of the Philadelphia Police Department.   One hour later police obtained a signed, written statement from him.   At 3:47 a. m., just six hours and *two minutes* after his arrest, Bennett was arraigned.   Both the trial court and Superior Court held this statement inadmissible under *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977).

Our constitutions guarantee every individual the right to know the nature and cause of the accusations against him

and the right to be free from any unnecessary abridgement of his liberty. To insure these rights, our rules require that an individual who is arrested be afforded a preliminary arraignment before a judicial officer without unnecessary delay. See Pa.R.Crim.P. 122, 123, 130, 140. This Court adopted a prophylactic rule: Absent exigent circumstances, if the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment is inadmissible at trial. *Commonwealth v. Davenport, supra.* Notwithstanding the goals of *per se* rules—motivation of law enforcement officials to conduct criminal investigations fairly, responsibly and, in cases such as the instant one, promptly and ease of judicial administration—"stop watch justice" exacts a considerable toll on society when one who is actually guilty of the crimes charged escapes conviction and punishment for his guilty conduct because of what is termed in lay parlance, a "technicality". These goals, though laudable, "should not be exalted at the expense of justice." *Commonwealth v. Blady,* 492 Pa. 285, 286, 424 A.2d 864 (1980) (Mr. Justice Larsen, dissenting).

Due to the inherent inexactitude of human experience, it is not surprising that an accused should assert inadmissibility of a statement due to a mere two minute delay in the arraignment procedure. Such a delay is certainly properly characterized as *de minimis* non-compliance with *Davenport.* Instantly, however, the trial court rejected the Commonwealth's suggestion it should overlook such a *de minimis* infraction. In my view, in application of the ancient maxim "Lex non curat de minimis," Hob. 88, a delay of more than six hours should not *per se* render any pre-arraignment statement inadmissible; rather, I would place on the Commonwealth the burden of proving that the delay was not unnecessary when the delay between arrest and arraignment exceeds six hours. "A clock-watching ritual should not be substituted for scrutiny of the record, analysis of the evidence and flexible application of standards of review designed to accommodate conflicting interests." *Commonwealth v. Blady, supra.* (Mr. Justice Larsen, dissenting).

I enthusiastically approve the Superior Court's limitation of *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975) and recognition of the admissibility of a statement obtained in violation of *Davenport* as a tool for impeaching the credibility of a defendant who elects to testify at trial. In deciding whether to permit impeachment by statements of an accused which have been suppressed, we should distinguish those statements judicially determined to have been involuntary from statements suppressed for some other reason, as, for example, the operation of a *per se* type prophylactic rule. Coerced statements of an accused are *inherently* unreliable; they have *no* probative value and are, for all purposes, a nullity. Use of coerced statements, thus, is and ought to be barred for *all* purposes, including impeachment. However, voluntary statements of an accused, otherwise suppressed, are not necessarily thereby unreliable. On this record the statement in question is not so infirm, therefore, the interests served by the prophylactic rule must defer to society's need to deter perjury and promote the truth determining process. Impermissible police activity is sufficiently discouraged by barring admission of the statement in the Commonwealth's case in chief. If the accused then elects to testify, I would admit on cross-examination the suppressed, but *voluntary* statement to aid the fact-finder in its quest for the truth.

HUTCHINSON, J., joins this concurring opinion.

McDERMOTT, Justice, concurring.

I concur in the result reached by the majority.

By a "per curiam affirmance," we are overlooking an opportunity to clarify some very disturbing issues.

By affirming the opinion of the Superior Court, we are reasserting the iron rule of *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), a rule that would suppress an otherwise constitutionally-obtained statement, because the police were two minutes late in bringing a defendant before a court.

By affirming the Superior Court, we are narrowing the application of *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d 62 (1975) and affirming that statements obtained in violation of *Davenport* may be used to impeach a defendant who offers his testimony at trial. We should go further and ourselves say that the iron six-hour rule of *Davenport* has created more mischief than it ever cured, and that, in fact, it cannot even cure the mischief to which it was addressed. The *Davenport* rule had shielded the guilty for no reason relevant to the individual circumstances of their cases. A prophylactic rule, such as the six-hour rule, is a classic of technicality. Classic because it applies to all circumstances, no matter what distinctions of justice may inhere in the facts of a given case. It answers a drum sounding on a different field. We have invoked the rule to prevent one form of illegality, an illegality that can be monitored without subjecting our judicial system to the sorest criticism, when the guilty go free for no reason except an unnecessary and inapplicable rule.

We should reverse *Commonwealth v. Triplett* in all its meanings and follow the Supreme Court of the United States in *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), joining the major current of American jurisprudence. *Triplett* is a license to lie, to commit perjury, to outrage common sense and to make the parties, as well as the courts, conspirators to suppress the known truth of a case. It has not been said better than it was said by the Supreme Court of the United States in *Harris v. New York:*

> The impeachment process here undoubtedly provided valuable aid to the jury in assessing [defendant's] credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury... Having voluntarily taken the stand, [defendant] was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.

401 U.S. at 225, 91 S.Ct. at 645.

LARSEN, J., joins in this concurring opinion.