487 A.2d 869

**COMMONWEALTH of Pennsylvania**

v.

**Charlene DEVAN, a/k/a Shirley Artis, Appellant.**

Superior Court of Pennsylvania.

Argued May 23, 1984.

Filed Jan. 11, 1985.

96

Michael P. Gottlieb, Assistant Public Defender, Norristown, for appellant.

Joseph Hylan, Assistant District Attorney, Norristown, for Commonwealth, appellee.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the trial court erred in denying her motion to suppress certain oral statements and physical evidence because they were obtained in violation of Pa.R. Crim.P. 130 and *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). Because we agree that the oral statements should have been suppressed, we reverse and remand for a new trial.

On October 28, 1981, at approximately 3:30 p.m., appellant was arrested while walking along York Road in Abington Township after police received information from security personnel at the Lord and Taylor's department store that two women had stolen a jacket from the store. Appellant, upon being advised of her *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), told the police that her name was Sylvia Gray and that she was seventeen years old. After an arrest report was completed, she was turned over to the Juvenile Division so that her parents could be contacted. The officers were unable to verify the name given, and at about 5:20 appellant told them her name was Charlene Devan but furnished no identification in support thereof. Following further unsuccessful attempts to verify her name, the officers, at approximately 8:00 p.m., reread appellant her *Miranda* rights and proceeded to question her. In the course of this conversation, appellant again stated that her name was Charlene Devan and that identification could be found in the glove compartment of an Oldsmobile automobile which the police

had impounded.[1] The officers found the glove compartment locked, however, and, after speaking with appellant, they were given a key to the compartment and the trunk. In the glove compartment, the police found a checkbook and various identification, including a driver's license, in the name of Charlene Devan. They also found an assortment of new clothes from several stores in the trunk, and appellant then made several statements concerning who had purchased those items. At about this time the officers received information from Lord and Taylor's that appellant had attempted to purchase some merchandise with a check in the name of Charlene Gaither. When confronted with this new information, appellant told the police that this checkbook was hidden at the scene of her arrest. At approximately 9:00 that evening, the officers took appellant back to York Road where the checkbook in the name of Charlene Gaither and the check which they had received information about were found.

Immediately after returning to the police station with appellant, the officers prepared a new complaint which they completed around 11:00 p.m. Sometime between 11:00 and 11:30, the officers attempted to have appellant arraigned,

> [b]ut Magistrate Plummer was not to be bothered at night, and Magistrate Peterson was unable to be contacted, so the complaints were left for the Justice of the Peace who came in in the morning, and they were sent down when the office opens at 9:00. He [Magistrate Plummer] called, he had the paperwork completed sometime after that for the arraignment.

(N.T., Suppression Hearing, April 20, 1982 at 30–31). Appellant was finally arraigned the next day, October 29, 1981, "[i]n the area of 12:00 or noon, sometime within, give or take an hour." (*Id.* at 30). She was charged with

---

1. Lord and Taylor personnel had told the investigating officers that a third suspect, a male, had come into the store with the two women, left, and gotten into the Oldsmobile. The car was found abandoned with a jacket, apparently purchased at some other store, lying on the back seat. The male suspect was apprehended in a store adjacent to Lord and Taylor's.

criminal conspiracy, criminal attempt to commit theft by deception, criminal attempt to commit the crime of bad checks, theft by deception, and theft by receiving stolen property.

Appellant's pre-trial motion to suppress was denied on April 20, 1982. Following trial on April 21–22, appellant was found guilty of the criminal attempt charges. Post-verdict motions were timely filed, argued, and denied. Appellant was then sentenced on January 3, 1983 to a term of imprisonment of one-to-two years for attempted theft [2] and ordered to pay the costs of prosecution on the attempted bad checks offense.[3] This appeal followed.

"[W]hen a defendant has been arrested without a warrant in a court case, a complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the proper issuing authority *without unnecessary delay."* Pa.R.Crim.P. 130(a) (emphasis added). To enforce Rule 130 (then Pa.R.Crim.P. 118), our Supreme Court has held that evidence obtained during an unnecessary delay between arrest and preliminary arraignment is inadmissible at trial. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). Following *Futch,* the Court adopted a rule pursuant to its supervisory power under which statements obtained after arrest and before arraignment are inadmissible at trial if the accused is not arraigned within six hours of arrest. *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977). A delay of two minutes beyond the six-hour period has been held to be a violation of the *Davenport* rule. *Commonwealth v. Bennett,* 287 Pa. Superior Ct. 485, 430 A.2d 994 (1981), *aff'd per curiam,* 498 Pa. 656, 450 A.2d 970 (1982); *see also Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1981) (*per curiam;* ten minute delay required suppression); *cf. Commonwealth v. Robertson,* 317 Pa.Superior Ct. 158, 463 A.2d 1133 (1983).

Here, appellant contends that because arraignment did not take place until approximately twenty and one-half

2. 18 Pa.C.S.A. §§ 901 and 3922.

3. *Id.* § 4105.

hours after her arrest, her oral statements and the physical evidence obtained as a result of such statements should be inadmissible at trial. The Commonwealth, in turn, argues that the delay was excusable because of exigent circumstances, the presence of which constitute an exception to the six-hour rule: "Six hours provides a workable rule which can readily be complied with in the absence of exigent circumstances." *Commonwealth v. Davenport, supra* 471 Pa. at 286 n. 7, 370 A.2d at 306 n. 7; *see also Commonwealth v. Travaglia*, 502 Pa. 474, 467 A.2d 288 (1983); *Commonwealth v. Keasley*, 501 Pa. 461, 462 A.2d 216 (1983); *Commonwealth v. Jenkins*, 500 Pa. 144, 454 A.2d 1004 (1982); *Commonwealth v. Williams*, 313 Pa.Superior Ct. 243, 459 A.2d 830 (1983); *Commonwealth v. Ryles*, 274 Pa.Superior Ct. 547, 418 A.2d 542 (1980). In the instant case, the lower court found two such circumstances: appellant's "obfuscatory tactics" and the unavailability of a magistrate on the night of October 28. (Lower Court Opinion at 2).

■ We agree with the lower court that part of the delay was due to appellant's own actions. Not until 5:20 p.m., almost two hours after her arrest at 3:30, did appellant give the police her correct name. While there are no Rule 130 cases holding that a defendant's conduct can constitute an exigent circumstance, we note that several Pa.R.Crim.P. 1100 "prompt trial" cases hold that a defendant cannot profit from delay which he or she has caused. *See, e.g., Commonwealth v. Machi*, 294 Pa.Superior Ct. 338, 439 A.2d 1230 (1982); *Commonwealth v. Gallo*, 276 Pa.Superior Ct. 562, 419 A.2d 601 (1980); *cf. Commonwealth v. Penn*, 497 Pa. 232, 439 A.2d 1154, *cert. denied sub nom., Penn v. Pennsylvania*, 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982) (no unnecessary delay under *Futch, supra*, where two hours of administrative processing were caused in part by defendant's misleading police as to his identity). As one officer testified:

We spend several hours trying to determine who the defendant was and who the other two defendants were,

and because of the size of the problem that we had—we don't have that big of a police department—there was only a couple officers working on it. It took us two hours just to get her to tell us she was Charlene DeVan, and she was only one of three people that we had to go through with the same exact problem about who they were. Several arrest reports had to be made up. And then when they'd tell us that's not their name, they had to be destroyed and new ones had to be made up. It's a very time-consuming process. And, in the meantime, we used all the normal police procedures such as the computer, such as the phone book, trying to verify the information that we were receiving. The delay was also caused by the fact that she told us she was a juvenile, and she was turned over to Juvenile, and it took them a little while to decide that she wasn't, in fact, a juvenile, and returned her back to us. So it was a very time-consuming thing.

(N.T., Suppression Hearing, April 20, 1982 at 27–28). Therefore, we will exclude the delay from 3:30 to 5:20 in determining whether or not the *Davenport* rule has been violated in this case.

Even excluding these two hours from the six-hour calculation, however, appellant still was not arraigned until over eighteen and one-half hours later. Beginning at 5:20, the *Davenport* rule would mandate an arraignment no later than 11:20 p.m. Between 11:00 and 11:30, however, the officers attempted to contact a magistrate, but one "was not to be bothered at night," and another could not be reached. (N.T., Suppression Hearing, April 20, 1982 at 30). The Commonwealth apparently begins the six-hour period at approximately 8:00, rather than at 5:20, because "[i]n light of [appellant's] previous deception, the police attempt to confirm the information can only be viewed as a prudent exercise of administrative caution." (Appellee's Brief at 6). Therefore, under *Davenport,* an 8:00 starting time would compel that the arraignment be held by 2:00 a.m. But we

need not decide whether 5:20 or 8:00 is the correct starting time because of our disposition of the case.

The absence of a judicial officer has been held to be an exigent circumstance. *Commonwealth v. Keasley, supra; Commonwealth v. Jenkins, supra; Commonwealth v. Ryles, supra.* In *Keasley,* the defendant was not arraigned until twelve hours after his arrest. Although he was brought before the court for an arraignment well within the six-hour period, the judge scheduled to be on duty was absent because he had accompanied his clerk, who had suffered a heart attack, to the hospital. Then,

> [e]fforts by police to secure the presence of the arraignment judge scheduled to be on duty as well as another arraignment judge were unsuccessful, and appellee was not arraigned until 6:25 a.m. that morning, after the judge scheduled to be on duty at 8:00 a.m. came on duty early at police request.

501 Pa. at 463, 462 A.2d at 217. In *Jenkins,* the police released the defendant five hours after his arrest "[w]hen it became apparent that it would become impossible to find an available judicial officer to arraign [him]...." 500 Pa. at 146, 454 A.2d at 1005. The defendant was then re-arrested the next day and arraigned within two and one-half hours. In *Ryles,* the defendant was taken for arraignment five hours and fifty-three minutes after his arrest, but "[t]he judge, although assigned for a [sic] eight hour shift which began at 4:00 p.m., was not present. The judge had left the court for supper...." 274 Pa.Superior Ct. at 550, 418 A.2d at 543. As in *Jenkins,* the police search for the judge was unsuccessful; however, unlike *Jenkins,* the judge returned shortly thereafter and arraignment began six hours and twenty-five minutes following Ryles' arrest.

 The instant case differs from *Keasley, Jenkins,* and *Ryles.* Here, after the unsuccessful attempt to hold the arraignment at about 11:30, appellant was neither released nor arraigned shortly thereafter. Assuming that the absence of a judicial officer between 11:00 and 11:30 constituted an exigent circumstance, we find nothing in the record to suggest that any effort was made to promptly

arraign appellant thereafter. We note that our Supreme Court, in *Jenkins,* stated:

Interestingly, both the suppression court and appellee implicitly concede that if the police had caused appellee to remain in custody, even beyond the six hour limit, while they were attempting to secure a judicial officer the case would probably have fallen within the exigent circumstances dispensation. *We agree with this conclusion assuming the Commonwealth's ability to establish its diligent effort in seeking a timely arraignment.*

500 Pa. at 151, 454 A.2d at 1007 (emphasis added). Here, appellant remained in custody from 11:30 p.m. until 12 noon the following day. Nowhere in the record is there any showing that the police officers attempted to have appellant arraigned after their initially unsuccessful try.[4] *Cf. Com-*

---

4. Although one of the judges in the instant case was not to be bothered at night, we note this language from *Ryles:*

We do not suggest or imply any improper or negligent conduct was involved. But, we assume it for purposes of our ruling in order to point out that, whatever conduct of an individual member of the judiciary may be involved, the direct supervisory authority of our courts of common pleas and of the appellate courts of this Commonwealth provides an adequate vehicle to deter it without resort to suppression on a per se basis.

274 Pa.Superior Ct. at 552 n. 4, 418 A.2d at 544 n. 4. That is not to say, however, that judicial conduct will never warrant suppression:

We do not mean to imply that the absence of any effort by the judiciary to afford prompt arraignment will also constitute an exigent circumstance. Many counties have established schedules for district judges to make themselves available and others, as in the case instantly, have established working shifts. *If a case arose in which no judicial efforts were made to afford prompt arraignment by shifts, schedules, or the like, the drastic remedy of suppression might indeed be warranted because such would necessarily involve a total disregard of the right to a prompt arraignment and because such would show an abdication by the courts involved of their responsibility to exercise supervision over judicial activity.*

*Id.,* 274 Pa.Superior Ct. at 551–52 n. 3, 418 A.2d at 544 n. 3 (emphasis added). We do not know whether or not the Montgomery County courts have established shifts or schedules for purposes of arraignment. *Cf., e.g.,* Philadelphia Ct. C.P. Rule 550(A) ("Preliminary arraignments shall be held at 12 midnight, 4 a.m., 8 a.m., 12 noon, 4 p.m., and 8 p.m."). Nonetheless, we need not decide whether the judicial conduct here warrants suppression because we find that the

*monwealth v. Keasley, supra* 501 Pa. at 463, 462 A.2d at 217 ("On this record, the Commonwealth has shown that the police diligently sought to locate an arraignment judge and to secure appellee's prompt arraignment both before and after it became apparent that the six-hour limit could not be met."). Nor is the three-hour delay on the morning of October 29 explained; although the complaints "were sent down when the office open[ed] at 9:00," N.T., Suppression Hearing, April 20, 1982 at 30–31, appellant was not arraigned until sometime "[i]n the area of 12:00 or noon. . . ." *Id.* at 30. We believe that the officers, knowing appellant's arrest to have taken place at around 3:30 the previous day, should have made every effort to expedite her appearance before a magistrate. Because we hold that this delay was inexcusable in light of the purposes that *Davenport* was designed to serve, we are constrained to find a violation of the six-hour rule.

The "unnecessary delay" rule and the six-hour rule were "adopted not simply to guard against the coercive influence of custodial interrogation, but to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Commonwealth v. Davenport, supra* 471 Pa. at 284, 287–88, 370 A.2d at 305–06. The purposes served by prompt arraignment are fourfold:

> to protect the accused's right to know "the nature and cause of the accusation against him," Pa.Const. art. I, § 9, his right to counsel, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); U.S. Const. Amends. VI, XIV; Pa.Const. art. I, § 9, and his right to reasonable bail. Pa.Const. art. I, § 14. *It also protects the accused's right to be free from unreasonable seizure of his person.* See *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); U.S.Const. amends. IV, XIV; Pa.Const. art. I, § 8.

police officers were not diligent in their efforts to promptly arraign appellant.

*Id.*, 471 Pa. at 283, 370 A.2d at 304 (emphasis added); *see also* Pa.R.Crim.P. 140(a) (preliminary arraignment requirements).

Therefore, because appellant's right "to receive an immediate and reasonable opportunity to regain [her] freedom by the posting of bail," *Commonwealth v. Jenkins, supra* 500 Pa. at 148, 454 A.2d at 1006, *citing Commonwealth v. McGeachy,* 487 Pa. 25, 28, 407 A.2d 1300, 1301 (1979), was denied, appellant's statements between the time of her arrest and arraignment must be suppressed. As our Supreme Court stated in *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973): "The danger of any such unnecessary and unconstitutional restriction of liberty diminishes significantly when a citizen is brought before a neutral judicial authority, there to be informed of the charges and provided with an immediate and reasonable opportunity *to regain his liberty* by the posting of a reasonable bail." *Id.,* 454 Pa. at 446, 311 A.2d at 614 (emphasis in original).

■ Having determined that appellant's oral statements must be suppressed, we must next determine whether physical evidence obtained as a result thereof must also be suppressed. In *Commonwealth v. Rhem,* 283 Pa.Superior Ct. 565, 424 A.2d 1345 (1980), we held that the *Davenport* rule does not apply to physical evidence. In *Rhem,* however, the defendant was searched; the search was not a result of any statements he made. Therefore, we believe instead that the instant case is controlled by the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In such a case, we ask " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " *Id.* at 488, 83 S.Ct. at 417, *citing* Maguire, *Evidence of Guilt,* 221 (1959).

[W]here the prosecution can establish that the challenged evidence would have come to its attention from an independent source free of taint, there is not the type of

exploitation of the illegality that requires the imposition of the rule of exclusion. Restated, where the evidence obtained as the result of illegal police activity would have been discovered in the course of a lawfully conducted investigation, no purpose is served in applying the exclusionary rule.

*Commonwealth v. Brown,* 470 Pa. 274, 284, 368 A.2d 626, 631 (1976). Because this case is being remanded, then, the trial court will have the opportunity to determine whether or not the evidence seized as a result of appellant's statements would have been found independently in the course of a lawfully conducted police investigation. If so, the evidence will be admissible. *See Commonwealth v. Jones,* 271 Pa.Superior Ct. 528, 536, 414 A.2d 379, 383 (1979).

Judgment of sentence is reversed and case is remanded for a new trial.

Reversed and remanded. Jurisdiction is not retained.

MONTEMURO, J., files a concurring opinion.

DEL SOLE, J., concurs in the result.

MONTEMURO, Judge, concurring:

While I agree with the result reached by the majority, I write separately to express my disagreement with the majority's reliance on *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977). (*See* Maj. Opinion at p. 104).

Although the six-hour rule enunciated in *Davenport* may not have been given a formal burial, the notice of its death was set forth in *Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1980) (Mr. Justice Larsen, dissenting opinion, joined by Mr. Justice Flaherty), *rearg. denied,* February 18, 1982; *Commonwealth v. Bennett,* 498 Pa. 656, 450 A.2d 970 (1982) (Mr. Justice Flaherty, concurring opinion, joined by Mr. Justice Hutchinson; Mr. Justice McDermott, concurring opinion); and *Commonwealth v. Jenkins,* 500 Pa. 144, 454 A.2d 1004 (1982) (Mr. Justice McDermott, concurring opinion).

In *Commonwealth v. Blady, supra,* the supreme court by Per Curiam Order affirmed the trial court's suppression of a confession where the defendant was arraigned six hours and *ten minutes* after his arrest. I note that in *Blady,* three of the four Justices who made up the majority are no longer on the court.

Mr. Justice Larsen in his dissenting opinion, which was joined by Mr. Justice Flaherty, wrote as follows:

Unlike the majority, I am not satisfied with the jurisprudential soundness of the *Davenport* approach; this approach is the quintessential illustration of mechanical jurisprudence.[1] While the rote application of the *Davenport* formula does achieve its desired result of ease of application and avoidance of troublesome complexities, a clock-watching ritual should not be substituted for scrutiny of the record, analysis of the evidence and flexible application of standards of review designed to accommodate conflicting interests. The goals of efficiency and ease of administration are laudable ones indeed, and I do not discount their importance. However, these goals should not be exalted at the expense of justice. (Footnote omitted).

. . . . .

Given the time of arrest—5:20 p.m.—and the time of arraignment—shortly after 11:30 p.m.—the period of delay between arrest and arraignment was approximately six hours and ten minutes. For the sake of ten minutes, the majority affirms the suppression of a confession given only three hours after the arrest (at 8:40 p.m.). I dissent. This Court should throw away the stopwatch and pick up the scales of justice.

*Id.,* 492 Pa. at 285–287, 424 A.2d at 864–65.

In *Commonwealth v. Bennett, supra,* the supreme court affirmed an order of this court, *Commonwealth v. Bennett,* 287 Pa.Super. 485, 430 A.2d 994 (1981), wherein we held that a statement obtained from an accused in violation of the six-hour rule and therefore inadmissible in the Common-

wealth's case-in-chief, may nevertheless be used to impeach the accused's trial testimony.

The trial court in *Bennett* awarded the defendant a new trial for the reason that defendant's voluntary statement should have been suppressed where he was arraigned six hours and *two minutes* after his arrest. The defendant also argued in his post trial motions, and the trial court agreed, that he had been prejudiced by the trial court's initial refusal to suppress his statement because his decision not to testify had been based on his fear that the Commonwealth would use the statement to impeach his credibility. The trial court concluded that statements inadmissible under *Davenport* could not be used to impeach the defendant's trial testimony.

Justice Flaherty, in a concurring opinion, in which Justice Hutchinson concurred, wrote:

> Our constitutions guarantee every individual the right to know the nature and cause of the accusations against him and the right to be free from any unnecessary abridgement of his liberty. To insure these rights, our rules require that an individual who is arrested be afforded a preliminary arraignment before a judicial officer without unnecessary delay. See Pa.R.Crim.P. 122, 123, 130, 140. This Court adopted a prophylactic rule: Absent exigent circumstances, if the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment is inadmissible at trial. *Commonwealth v. Davenport, supra.* Notwithstanding the goals of *per se* rules—motivation of law enforcement officials to conduct criminal investigations fairly, responsibly and, in cases such as the instant one, promptly and ease of judicial administration—"stop watch justice" exacts a considerable toll on society when one who is actually guilty of the crimes charged escapes conviction and punishment for his guilty conduct because of what is termed in lay parlance, a "technicality". These goals, though laudable, "should not be exalted at the expense of

justice." *Commonwealth v. Blady*, 492 Pa. 285, 286, 424 A.2d 864 (1980) (Mr. Justice Larsen, dissenting).

Due to the inherent inexactitude of human experience, it is not surprising that an accused should assert inadmissibility of a statement due to a mere two minute delay in the arraignment procedure. Such a delay is certainly properly characterized as *de minimis* non-compliance with *Davenport*. Instantly, however, the trial court rejected the Commonwealth's suggestion it should overlook such a *de minimis* infraction. In my view, in application of the ancient maxim "Lex non curat de minimis," Hob. 88, a delay of more than six hours should not *per se* render any pre-arraignment statement inadmissible; rather, I would place on the Commonwealth the burden of proving that the delay was not unnecessary when the delay between arrest and arraignment exceeds six hours. "A clock-watching ritual should not be substituted for scrutiny of the record, analysis of the evidence and flexible application of standards of review designed to accomodate conflicting interests." *Commonwealth v. Blady, supra.* (Mr. Justice Larsen, dissenting).

*Id.*, 498 Pa. at 657–658, 450 A.2d at 971.

In a separate concurring opinion, Mr. Justice McDermott with characteristic cogency, denounced the six-hour rule as follows:

By a "per curiam affirmance," we are overlooking an opportunity to clarify some very disturbing issues.

By affirming the opinion of the Superior Court, we are reasserting the iron rule of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), a rule that would suppress an otherwise constitutionally-obtained statement, because the police were two minutes late in bringing a defendant before a court.

By affirming the Superior Court, we are narrowing the application of *Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975) and affirming that statements obtained

in violation of *Davenport* may be used to impeach a defendant who offers his testimony at trial. We should go further and ourselves say that the iron six-hour rule of *Davenport* has created more mischief than it ever cured, and that, in fact, it cannot even cure the mischief to which it was addressed. The *Davenport* rule had shielded the guilty for no reason relevant to the individual circumstances of their cases. A prophylactic rule, such as the six-hour rule, is a classic of technicality. Classic because it applies to all circumstances, no matter what distinctions of justice may inhere in the facts of a given case. It answers a drum sounding on a different field. We have invoked the rule to prevent one form of illegality, an illegality that can be monitored without subjecting our judicial system to the sorest criticism, when the guilty go free for no reason except an unnecessary and inapplicable rule.

*Id.,* 498 Pa. at 659–660, 450 A.2d at 972. *See also* concurring opinions of Mr. Justice McDermott in *Commonwealth v. Jenkins, supra;* and *Commonwealth v. Keasley,* 501 Pa. 461, 462 A.2d 216 (1983).

Clearly, Justices Larsen, Flaherty, McDermott and Hutchinson have all denounced the six-hour rule as a *per se* rule of exclusion. What is not so clear is what they might all agree would be a satisfactory and just alternative.

I favor the approach taken by Justices Flaherty and Hutchinson, i.e., when the delay between arrest and arraignment exceeds six hours, the Commonwealth has the burden of proving that the delay was not unnecessary.

In the case *sub judice,* I do not believe the Commonwealth met that burden, especially in view of the fact that there was no explanation whatsoever for not arraigning the appellant at 9 a.m. instead of 12 noon.

Thus, I would concur in the result reached by the majority and at the same time acknowledge the not-too-early demise of the infamous six-hour rule.