504 A.2d 1310

COMMONWEALTH of Pennsylvania

v.

James Dean LEWIS, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 22, 1985.

Filed Feb. 3, 1986.

596

Raymond H. Bogaty, Public Defender, Grove City, for appellant.

Charles S. Hersh, Assistant District Attorney, Hermitage, for Com., appellee.

Before SPAETH, President Judge,* and BROSKY, ROWLEY, WIEAND, McEWEN, CIRILLO, OLSZEWSKI, MONTEMURO and TAMILIA, JJ.

* Spaeth, P.J., participated in the consideration of this case before the expiration of his term on the Court.

OLSZEWSKI, Judge:

This matter comes before this court en banc on appeal from a judgment of sentence for retail theft.[1] The relevant events occurred on January 5, 1982, at 7:11 p.m., when appellant, James Dean Lewis, was seen leaving Stambaugh's Hardware Store in Hermitage, Pennsylvania, without paying for a chain saw he had in his possession. At approximately 8:00 p.m., appellant was arrested at the scene by officers of the Hermitage Police Department, but he was not apprised of the reasons for his arrest. Soon after his arrival at police headquarters, appellant blurted out the following statement: "I didn't take no chain saw from Stambaugh's." Although appellant was in the custody of police when the statement was made, he was not, however, subjected to police interrogation at the time. Appellant was arraigned before a District Justice at 9:45 a.m. the following day.

Prior to trial, appellant filed a motion *in limine* requesting that the Commonwealth not be allowed to introduce his prior burglary conviction as impeachment evidence. The motion, however, was denied and he was convicted of retail theft. Following the denial of appellant's post verdict motions, he was sentenced to six months' imprisonment. Appellant was paroled on April 13, 1983.

Appellant now raises three points of error. He contends that the trial court: (1) erred in permitting the Commonwealth to use appellant's prior burglary conviction for impeachment purposes; (2) erred in failing to suppress an inculpatory statement made by appellant prior to his arraignment in violation of the *Davenport* rule; and (3) erred in refusing to order a new trial based on after-discovered evidence. We will address these arguments seriatim.

## I.

Although it is generally well accepted as a fundamental tenet of American jurisprudence that an accused has a right

1. 18 Pa.C.S.A. Sec. 3929(a).

to testify as a witness in his own behalf, it is also equally well established that the opposing party may impeach this witness by introducing before the trier of fact the individual's prior conviction(s). *Commonwealth v. Roots*, 482 Pa. 33, 35, 393 A.2d 364, 365 (1978) (Nix, J.). Whereas evidence of a prior conviction is offered so that the jurors may use it in evaluating a witness's credibility, this result does not always follow. Very often, jurors unfairly interpret this evidence as an indication of the accused's propensity to commit a crime. The likelihood of this event occurring, however, has not prevented the courts of this Commonwealth from permitting the use of such evidence, at least in a limited sense.[2]

In the instant case, appellant argues that he was foreclosed from testifying at trial because of the lower court's decision to allow appellant's prior conviction into evidence for impeachment purposes. Appellant believed that if he had opted to testify, the jurors would have been prejudiced against him purely because of this evidence. We disagree with this position.

It has been decided by our Pennsylvania Supreme Court in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973), that an accused was not denied a fair trial under the Due Process Clause of the Fourteenth Amendment merely because a prior conviction would have been used against him as rebuttal evidence if he had decided to take the stand during his trial and testify in his own defense. Notwithstanding this rule, the court, however, has been mindful of the inclinations of the average juror to associate prior convictions with an accused's propensity to commit criminal acts. As a result, the court limited the convictions to be used in rebuttal to those crimes involving dishonesty or

2. Courts have attempted to avoid this prejudice first by allowing the defendant the election not to testify without adverse comment, *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973), and, in the event that he chooses to testify and such evidence is introduced, by making a cautionary instruction available to the defendant. (cites omitted).
*Commonwealth v. Bighum*, 452 Pa. 554, 566, 307 A.2d 255, 262 (1973).

false statement and directed the lower courts to consider the following factors in deciding whether to allow such evidence to be admitted at trial. They are as follows:

1) The degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendancy to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecutions's case and the prosecution's need to resort to this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Commonwealth v. Roots*, 482 Pa. 33, 39–40, 393 A.2d 364, 367 (1978).

■ We are satisfied that the trial court considered these factors in denying appellant's motion, therefore, we affirm the lower court's decision.

## II.

■ Nor can we agree with appellant's second contention that the trial court failed to suppress a statement he made to police pursuant to the *Davenport* rule. Succinctly stated, *Davenport* provides that when an accused is not arraigned within six hours of arrest, any declaration obtained after arrest but before arraignment is not admissible. *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977). Although this rule traditionally has been employed on a per se basis, our common sense and better judgment

preclude us from applying it under the facts of the instant case.[3]

Article I, Section 9 of the Pennsylvania Constitution, in pertinent part, guarantees that in all criminal prosecutions the accused has a right to be heard, a right to know the nature and cause of the accusations against him ... and to be free from any unnecessary abridgement of his life, liberty or property. Thus, in order to insure these rights and to protect these liberties, the Pennsylvania Rules of Criminal Procedure require that an individual who has been arrested shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay. See Pa.R.Crim.P. 122, 130.[4] At the time of the preliminary arraignment, the accused shall be informed of the charges against him, his right to counsel, his right to bail and his right to a preliminary hearing. Pa.R.Crim.P. 140.[5] In an attempt to enforce the prompt arraignment requirement, the rule of *Davenport* was born.

■ It was thought by its authors and those who subsequently adopted it that the per se rule would assure a more certain and even-handed application of the prompt arraign-

3. The English essayist, Sir Max Beerbohm, once said: "Somehow, our sense of justice never turns in its sleep till long after the sense of injustice in others has been thoroughly aroused."

4. Pa.R.Crim.P. 122 provides:
   When a defendant has been arrested in a court case, with a warrant, within the judicial district where the warrant of arrest was issued, the defendant whall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.
   Pa.R.Crim.P. 130, in pertinent part, provides:
   (a) Except as provided in paragraphs (b) and (c), when a defendant has been arrested without a warrant in a court case, a complaint shall be filed against the defendant and the defendant shall be afforded a preliminary arraignment by the proper issuing authority without unnecessary delay.

5. Pa.R.Crim.P. 140, in pertinent part, provides:
   (a) At the preliminary arraignment, the issuing authority shall ... deliver a copy of the complaint to him ... inform the defendant:
   (1) of his right to secure counsel of his choice and his right to assign counsel in accordance with Rule 316;
   (2) of his right to have a preliminary hearing; and
   (3) if the offense is bailable, of the amount of bail demanded and the types acceptable as provided in these rules.

ment requirement, and would simplify the task of determining the admissibility of similar prearraignment statements under the guise of judicial economy. The rigid application of this rule in all situations, however, is not always a wise course of conduct to follow especially when justice is averted via a mere technicality.[6] Our courts have been mindful of the problems caused by the *Davenport* rule and have limited its application either by making exceptions to it or by recognizing an implicit "exigent circumstances qualification."[7] Under the facts of the present case, we are com-

6. Support for the *Davenport* rule has not always been unanimous among the Justices of the Pennsylvania Supreme Court. For instance, in *Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1980), *rearg. denied,* February 18, 1982, Mr. Justice Larsen joined by Mr. Justice Flaherty referred to the *Davenport* rule as the "quintessential illustration of mechanical jurisprudence" in expressing their dissatisfaction with the "rote application of the *Davenport* formula" at the "expense of justice." Other members of the Court noted their displeasure with the "iron rule" in *Commonwealth v. Bennett,* 498 Pa. 656, 450 A.2d 970 (1982) (Mr. Justice Flaherty, concurring opinion, joined by Mr. Justice Hutchinson; Mr. Justice McDermott, concurring opinion, joined by Mr. Justice Larsen) and *Commonwealth v. Jenkins,* 500 Pa. 144, 454 A.2d 1004 (1982) (Mr. Justice McDermott, concurring opinion). In the former case, Mr. Justice McDermott wrote: "we have invoked the rule to prevent one form of illegality, an illegality that can be monitored without subjecting our judicial system to the sorest criticism, when the guilty go free for no reason except an unnecessary and inapplicable rule." *Bennett,* 498 Pa. at 660, 450 A.2d at 972.

7. The courts in the following cases have declined to suppress statements and/or evidence pursuant to the *Davenport* rule because of exigent circumstances. *See Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983), *reh. denied,* —— U.S. ——, 105 S.Ct. 27, 82 L.Ed.2d 850 (1984) (the delay in arraignment proceedings can be attributed to the travel time between the place of arrest and arraignment); *Commonwealth v. Keasley,* 501 Pa. 461, 462 A.2d 216 (1983) (a delay in excess of six hours prior to arraignment resulted from the unavailability of *a judge despite diligent efforts·by the police the summon another judge);* Commonwealth v. Jenkins, *500 Pa. 144, 454 A.2d 1004 (1982) (Commonwealth's election to release defendant within six-hour period to avoid consequences of violation of prompt arraignment rule did not require suppression of inculpatory custodial statement given by defendant).* Commonwealth v. Ryles, *274 Pa.Super. 547, 418 A.2d 542 (1980) (the six hour rule was not violated where the delay was caused by the unavailability of the presiding judge).*

Despite the per se application of the *Davenport* rule, the relevant statements may nevertheless be used for impeachment purposes. *See Commonwealth v. Bennett,* 287 Pa.Super. 485, 430 A.2d 994 (1981), *aff'd per curiam,* 498 Pa. 656, 450 A.2d 970 (1982). In another effort

pelled to find that absent police coercion, any "blurt out" by an accused shall be admissible at trial despite a delay of more than six hours between the time of arrest and arraignment where the "blurt out" is unrelated to the illegal detention.

> Without a doubt "supression is a drastic remedy designed to deter illegal conduct and protect an individual's rights." *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); *Commonwealth v. Williams,* 454 Pa. 368, 312 A.2d 597 (1973). In particular, suppression represents a judicial response to illegal activity by those not immediately subject to the supervisory authority of the courts, i.e., an indirect sanction on those the courts cannot directly sanction which renders fruitless the illegal activity and thereby deters that activity.

*Commonwealth v. Ryles,* 274 Pa.Super. 547, 552, 418 A.2d 542, 544 (1980).

In most instances, this analysis is correct, nevertheless it is incomplete when applied to the facts of the present case. Here, there is no relationship between the illegal activity sought to be deterred (the delay in excess of six hours between the time of arrest and arraignment) and the "blurt out." Along the same lines of the *Davenport* rule, the United States Supreme Court has fashioned the *McNabb-Mallory* rule [8] which precludes the use of any evidence obtained during an "unnecessary delay" between arrest and arraignment. This rule, however, is subject to the common sense caveat that the "unnecessary delay" must have contributed to the securing of the evidence. *Commonwealth v. Futch,* 447 Pa. 389, 393, 290 A.2d 417, 419 (1972).

The circumstances arising under *United States v. Mitchell,* 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944) (Frankfurter, J.) bear a striking resemblance to the instant case

to limit *Davenport,* the court in *Commonwealth v. Rhem,* 283 Pa.Super. 565, 424 A.2d 1345 (1980), held that *Davenport* applies only to statements and not physical evidence.

8. *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1947); *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

and are worth noting. Mitchell was taken into custody at his home at 7:00 p.m. for house breaking and larceny and was driven by two police officers to the precinct station. Within minutes of his arrival at police headquarters, Mitchell admitted guilt, made several other inculpatory remarks and consented to a search of his home. Mitchell was arraigned eight days later. Despite the unfairness of the detention for this lengthy period, the court nevertheless found the confession and resulting evidence admissible. The Court offered the following reasoning to support its position.

> Illegality is illegality, and officers of the law should deem themselves special guardians of the law. But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These, we have seen, were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not to be used as an indirect mode of disciplining misconduct.

*Id.* at 70–71, 64 S.Ct. at 898, 88 L.Ed. at 1143.

We believe that the facts in the instant case compel a similar treatment. It is undisputed that appellant uttered an inculpatory remark soon after his arrest at police headquarters. Although he was illegally detained for more than six hours before his arraignment, we nevertheless find that the illegality of the detention is unrelated to the "blurt out." Appellant's remarks were not induced by police inquiry or other official action; rather, the statements were made as a voluntary and spontaneous act of free will. Clearly this is not a case in which "important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will." *Blackburn v. Alabama,* 361 U.S. 199, 206–207, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, 248.

We are not convinced that the subsequent illegal detention of appellant in this case should negate his prior voluntary act. Surely, suppression would serve no useful purpose but to deny logic in an absurd effort to strike out at police misconduct. In conclusion, we must not forget the words of the Greek tragic playwright, Aeschylus, when he said, "Wrong must not win by technicalities." We therefore ardently affirm the denial of the suppression motion.

### III.

■ Finally, appellant argues that the trial court erred in denying his bid for a new trial on the basis of after-discovered evidence. Following appellant's conviction for retail theft, an individual by name of Christy admitted to appellant's counsel that he had committed the crime for which appellant was convicted. At an evidentiary hearing, Christy confessed to the crime, exonerated appellant, and explained why he had not come forward prior to this time.[9] The trial court subsequently denied appellant's motion by an order dated October 1, 1982 and filed October 5, 1982, but unfortunately it did not address this issue in a formal opinion.[10] Consequently, we are unable to review this matter at this time since we do not have before us the lower court's analysis. We therefore remand for an opinion by the trial court in support of its decision. We further vacate the judgment of sentence pending the trial court's disposition of this issue, at which time that court may reimpose sentence if it is deemed appropriate. Jurisdiction is relinquished.

SPAETH, President Judge, files concurring opinion, in which WIEAND and TAMILIA, JJ., join.

McEWEN, J., files concurring and dissenting Statement.

SPAETH, President Judge, concurring:

I join Parts I and III of the majority opinion.

9. Christy explained that he did not come forward with this evidence earlier, because he hoped appellant would be acquitted.

10. See Pa.R.App.P. 1925(a).

As to Part II, I agree with the majority's conclusion that appellant's statement was admissible although more than six hours elapsed between his arrest and preliminary arraignment. In my opinion, the Supreme Court has already determined that *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), does not require suppression of a blurted out statement. In *Commonwealth v. Jenkins*, 500 Pa. 144, 454 A.2d 1004 (1982), the Court said that *Davenport* did not "establish[ ] a rigid standard impervious of the purposes it was intended to serve," and that "[a]t no time did [the Court] wish to cut off freely volunteered confessions." *Id.*, 500 Pa. at 150, 454 A.2d at 1007. Suppression of appellant's statement would not further "[*Davenport's* ] primary purpose ... to discourage the obtaining of incriminatory information through coercive means." *Id.*

In any case, *Davenport* has for practical purposes been overruled, albeit not formally. Various of the Justices of the Supreme Court have repeatedly said that the rule enunciated in *Davenport* is unsatisfactory. *See Commonwealth v. Keasley*, 501 Pa. 461, 464, 462 A.2d 216, 217 (1983) (McDERMOTT, J., concurring) ("Any departure from a rigid application of the six-hour rule of *Davenport* [ ] is a step in the right direction."); *Commonwealth v. Jenkins, supra,* 500 Pa. at 152, 454 A.2d at 1008 (McDERMOTT, J., concurring) ("We must therefore discard *Davenport* and return to a more flexible approach."); *Commonwealth v. Bennett,* 498 Pa. 656, 658, 450 A.2d 970, 971 (1982) (FLAHERTY, J., joined by HUTCHINSON, J., concurring) ("a delay of more than six hours should not *per se* render any prearraignment statement inadmissible"); *Commonwealth v. Blady,* 492 Pa. 285, 286, 424 A.2d 864, 864 (1980) (LARSEN, J., joined by FLAHERTY, J., dissenting) (expressing dissatisfaction with mechanical application of rule). While these individual expressions do not themselves constitute an overruling of *Davenport*, it is nevertheless significant that they have been uttered by a majority of the members of the Court. What persuades me that *Davenport* has for practical purposes been overruled is the Court's decision in *Common-*

*wealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983). There the Court by ZAPPALA, J., joined by LARSEN, FLAHERTY, McDERMOTT, and HUTCHINSON, JJ., found exigent circumstances, but added in *dictum* that "the continuing vitality of the *Davenport* rule as a whole is subject to speculation ...," *id.* at 490, 467 A.2d at ˙296 (citing the cases I have just cited). Neither the concurring opinion, by NIX, J., nor the dissenting opinion, by ROBERTS, C.J., took issue with this *dictum.* I agree, however, with the proposition implicit in the majority opinion, that until *Davenport* has been expressly overruled, it must be followed.

WIEAND and TAMILIA, JJ., join in this concurring opinion by SPAETH, President Judge.

McEWEN, Judge, concurring and dissenting:

The author of the majority quite carefully and correctly demonstrates that a rigid application of the *Davenport* rule may be unwise and even, as here, ill-serve our criminal justice system. However, I hesitate to abrogate a *per se* rule established by our Supreme Court, since such a decision would seem to be solely the prerogative of the Supreme Court.